## MEYER *et al. v.* CADWALADER, Collector.[1]

(*Circuit Court, E. D. Pennsylvania.* June 18, 1891.)

1. **CUSTOMS DUTIES—HAT TRIMMINGS.**

    The clause of the tariff act of 1883, providing for "braids, plaits, flats, laces, trimmings, tissues, willow sheets and squares, used for making or ornamenting hats, bonnets, and hoods, composed of straw, chip, grass, palm-leaf, willow, hair, whalebone, or any other substance or material not specially enumerated or provided for," includes goods known, respectively, as "chinas" and "marcelines," and principally used for lining hats, if such goods are trimmings, and are chiefly used for making or ornamenting hats, bonnets, and hoods.

2. **SAME—MEANING OF WORDS.**

    The term "trimmings" should not, under the evidence, be given any technical or particular commercial meaning, but should receive its popular signification and common import, as used and applied in ordinary life.

3. **SAME—COMMERCIAL DESIGNATION.**

    The mere fact that chinas and marcelines are bought and sold by those particular names, and are called "linings," does not necessarily exclude them from the class of trimmings if they are in fact trimmings chiefly used either for making or ornamenting hats, bonnets, and hoods.

4. **SAME—FORM IN WHICH ARTICLE IS IMPORTED.**

    The fact that the articles are imported by the piece, and must be cut up before they are actually applied to use in making or ornamenting hats, does not exclude them from the class of trimmings, if they are distinctly adapted and chiefly used for trimming hats, bonnets, and hoods, and are not specially enumerated or provided for in the act.

5. **SAME—SILK ACT OF 1875.**

    Hat trimmings are dutiable under the hat-trimming clause of the act of 1883, and not under the silk act of February 8, 1875, notwithstanding that silk is their component material of chief value, and that they contain less than 25 per cent. in value of cotton.

At Law. *Assumpsit* to recover an excess of duties alleged to have been illegally exacted by the collector on goods imported by the plaintiffs in 1884. The facts are sufficiently set forth in the charge. The verdict was for the plaintiffs.

*Frank P. Prichard* and *Henry E. Tremain,* (*Cyrus E. Woods, Harry T. Kingston, Augustus R. Stanwood,* and *Charles Curie,* with them,) for plaintiffs.

*W. W. Carr,* Asst. U. S. Atty., *John R. Read,* U. S. Atty., *W. P. Hepburn,* Sol. of Treasury, and *William H. Taft,* Sol. Gen., for defendant.

ACHESON, Circuit Judge, (*charging jury.*) This is an action by Meyer & Dickinson, importers, against the collector of the port of Philadelphia, (the United States being the real defendant,) to recover an alleged excess of duties paid under protest on goods entered at the custom-house on February 18, March 26, and April 16, 1884. The goods which were the subject of the duty were chinas and marcelines, the latter being made wholly of silk, and the former of silk and cotton, silk being the component material of chief value. The custom-house officers assessed upon the goods a duty of 50 per centum *ad valorem* under the last clause of Schedule L of the tariff act of March 3, 1883, (22 St. 510,) which reads:

[1] Reported by Mark Wilks Collet, Esq., of the Philadelphia bar.

"All goods, wares, and merchandise not specially enumerated or provided for in this act, made of silk, or of which silk is the component material of chief value, fifty per centum *ad valorem*."

The plaintiffs claim that the goods were liable only to 20 per centum *ad valorem* duty under the clause in Schedule N of the act which reads thus:

"Hats, and so forth, materials for: Braids, plaits, flats, laces, trimmings, tissues, willow sheets and squares, used for making or ornamenting hats, bonnets, and hoods, composed of straw, chip, grass, palm-leaf, willow, hair, whalebone, or any other substance or material not specially enumerated or provided for in this act, twenty per centum *ad valorem*."

The act of 1883 does not, in Schedule L or elsewhere, impose any duty upon chinas or marcelines by those names. The plaintiffs claim that the chinas and marcelines, the subject of this dispute, come under the clause just read, which begins with the words, "Hats, and so forth, materials for," as being trimmings chiefly used for making or ornamenting hats, bonnets, and hoods, and hence dutiable at 20 per centum *ad valorem* only. Whether these goods come under that clause, and are dutiable at 20 per centum instead of 50 per centum, as the custom-house officers held, is the question in this case.

The solution of the question involves two inquiries: *First.* Are these chinas and marcelines trimmings? *Secondly.* Are they chiefly or principally used for making or ornamenting hats, bonnets, and hoods? If an affirmative answer is given to both of these inquiries your verdict should be for the plaintiffs; but if a negative answer is given to either of them the defendant would be entitled to your verdict.

There is much testimony in the case tending to show that at the date of the passage of the tariff act of 1883 there was, and for a long time prior thereto had been, a well-recognized general class of articles, easily distinguishable by those in the trade, known under the denomination of "trimmings," the principal use of which was for making or ornamenting hats, bonnets, and hoods, and having their chief commercial value from that use. Many witnesses have testified that this general class styled "trimmings" embraces a great variety of articles, composed of different substances or materials, each of which articles has its own specific or particular name. Furthermore, there is evidence tending to show that these various articles thus constituting the general class of "trimmings" were and are imported into this country in different forms; for example, some by the gross, some cut in divers ways, and some by the piece. This designation, "trimmings," is found in the particular clause of the tariff act of 1883, under which the present controversy has arisen. The introductory words of that clause are these, "Hats, and so forth, materials for;" or, transposing the words, "Materials for hats, and so forth." The general subject-matter, then, of the clause, is "materials for hats, bonnets, and hoods." Immediately following the introductory words just quoted, the act specially names "braids, plaits, flats, laces, trimmings, tissues, willow sheets and squares." Then comes the declared use to be made of those eight articles, namely, "used for making

or ornamenting hats, bonnets, and hoods." So far as the question involved in the present case is concerned, the clause is to be read as if it stood thus:

"Trimmings used for making or ornamenting hats, bonnets, and hoods, and composed of straw, chip, grass, palm-leaf, willow, hair, whalebone, or any other substance or material, and not specially enumerated or provided for in this act."

Undoubtedly, then, this clause of the act embraces the entire class of trimmings shown to exist, of whatsoever substance or material composed, the chief use of which is for making or ornamenting hats, bonnets, and hoods, and not specially enumerated or provided for in the act. This was the decision of the supreme court of the United States in the two cases to which counsel have referred,—*Hartranft* v. *Langfeld*, 125 U. S. 125, 8 Sup. Ct. Rep. 732; *Robertson* v. *Edelhoff*, 132 U. S. 614, 10 Sup. Ct. Rep. 186.

I have already called your attention to the fact that chinas and marcelines are not specially made dutiable by those names by the tariff act of 1883. Are these articles trimmings, within the meaning of the clause relating to "Hats, and so forth, materials for," and dutiable at the rate of 20 per centum? The evidence tends to show that chinas and marcelines were used at the time of the passage of the tariff act of 1883, and long had been used, for lining hats, bonnets, and hoods; that they were and are particularly adapted to that use, and had and have their chief commercial value therefrom. The plaintiffs' witnesses have testified that these articles have always belonged to and constituted a part of the general class of hat trimmings, and have been used and chiefly used to trim and finish hats, bonnets, and hoods, and make the same merchantable commodities. The defendants' witnesses have testified that chinas and marcelines do not belong, and never did belong, to the class of trimmings for hats, bonnets, and hoods. In this matter these witnesses make a distinction between the outside and the inside of a hat, bonnet, or hood. According to their conception and expressed views, only the outside decorations or adornments of a hat, bonnet, or hood are embraced in the designation "trimmings." They give to the term, you perceive, the most narrow signification it will bear. Undoubtedly the word "trimmings," as used in the clause relating to "Hats, and so forth, materials for," includes ornamental appendages. But does it include nothing more? This you will determine upon consideration of the whole evidence, and having regard, also, to the terms of the particular clause of the tariff act with which we are now dealing. The language of that clause, as it relates to trimmings, you will remember, is: "Hats, and so forth, materials for, * * * trimmings, * * * used for making or ornamenting hats, bonnets, and hoods." The use is not confined to ornamentation, but, by the express words of the clause, is "for making" as well as "ornamenting." Either use is within the language of the act.

The defendants' witnesses also make a distinction between trimmings and linings, and they state that the latter are not included in the desig-

nation or class of trimmings. But the mere fact that chinas and marcelines are called "linings" does not necessarily exclude them from the class of "trimmings." Mere names are not, of themselves, controlling. It is immaterial that chinas and marcelines are bought and sold by those particular names, and are called "linings," if, in fact, they are trimmings chiefly used either for making or ornamenting hats, bonnets, and hoods.

The plaintiffs contend that they have given evidence tending to show that the lining of hats, bonnets, and hoods is really a finish of an ornamental nature. How this is, you will determine. But, aside from the matter of ornamentation, you are to consider whether the lining of a hat, bonnet, or hood is not a part of the construction or making of the article, within the meaning of the clause of the tariff act. Again I direct your attention to the language therein employed: "Trimmings * * * used for making or ornamenting hats, bonnets, and hoods." You will also recall and give proper consideration to the evidence tending to show that commonly, the lining of a hat, bonnet, or hood is necessary to its finish and fitness for use, and is required to make it a completed article, and a merchantable commodity. Under the evidence in this case the term "trimmings" should not be given any technical or particular commercial meaning, but should receive its popular signification and common import. The word "trimmings" should be understood and applied in its natural sense, as used in ordinary life.

The evidence tends to show that chinas and marcelines are particularly adapted and intended to be used, and in fact are and long have been used, as inside appendages for hats, bonnets, and hoods, to trim and finish them, and that their substant'' commercial value consists in that use. Are they, or are they not trimmings, according to the natural meaning of that word? This you will determine, taking into consideration all the evidence on the subject, and having regard to the preponderating weight of the evidence. If you should find from the evidence that the articles here in question—chinas and marcelines—are not trimmings, that, of course, would make an end of the plaintiffs' case; but, if you should find them to be trimmings, then the only remaining inquiry will be as to what their chief use is. The plaintiffs have examined a large number of experienced witnesses, who have testified that the chief use of these goods is, and long has been, to line hats, bonnets, and hoods. Some evidence has been adduced by the defendant tending to show that these articles are adapted to some other purposes, and are so used to some extent; but I do not recall any testimony on the part of the defendant showing that the chief use of chinas and marcelines is for any purpose other than for lining hats, bonnets, and hoods. So that, according to my recollection of the testimony, the evidence offered by the plaintiffs as to the chief use of these articles is not contradicted. If, then, your finding should be that these goods are trimmings, and that their chief use is for making or ornamenting hats, bonnets, and hoods, your verdict should be for the plaintiffs.

It only remains for me to read and answer certain points or prayers for instructions submitted by counsel for the respective parties, and which cover every legal phase of the case. I am asked by the defendant to charge you:

"(1) If you believe that in March, 1883, chinas and marcelines were commercially known as 'linings,' and not 'trimmings,' then your verdict should be for the defendant."

This point is refused.

"(2) If you believe that the chinas and marcelines in suit were bought, sold, and used in trade in March, 1883, under those names, and were not commercially known as 'trimmings,' then your verdict should be for the defendant."

This point is refused.

"(3) If you believe that the chinas and marcelines were not 'trimmings,' according to the natural meaning of that word, in March, 1883, in the absence of evidence of commercial usage to the contrary, then your verdict should be for the defendant.'

This point is affirmed.

"(4) Your verdict must be for the defendant if you believe that the articles in suit were chiefly used in March, 1883, for purposes other than making or ornamenting hats, bonnets, or hoods, even if you believe that they were known as 'trimmings.' "

This point is affirmed, if you so find from the evidence.

"(5) If you believe that the process of lining a hat, bonnet, or hood is, in trade, not part of the trimming of it, then your verdict must be for the defendant."

This point is affirmed, if you so find from the evidence.

"(6) If you believe that the chinas and marcelines in suit were not in the form of trimmings at the time of their importation, you must find for the defendant, although you should believe that they were suitable and adapted by their nature and qualities to be made into hat trimmings."

This point is refused. This point which I have just read and the next one embody the proposition advanced by defendant's counsel, and discussed by them before the jury, that the chinas and marcelines here in question cannot be regarded as within the term "trimmings" as employed in the act of congress, because they are imported by the piece, and before the material is actually applied to use in the making or ornamenting of hats, bonnets, and hoods the pieces have to be cut up into smaller pieces, and made into certain forms. But the court cannot accept this view as correct, and I instruct you that hat materials which are imported by the piece are "trimmings," within the meaning of the act of congress, if they are distinctly adapted, and in fact are chiefly used, for trimming hats, bonnets, and hoods, and are not specially enumerated or provided for in the act.

"(7) The jury are instructed that there is a distinction properly to be made between 'trimmings' and materials out of which to manufacture trimmings, and, if the articles in suit are not trimmings in the sense of being completely fabricated as such, but required skill and labor to cut, fit, fold, sew, or fashion them into trimmings, then they must find for the defendant."

You will understand that I am asked to instruct you in this way. This is the proposition which counsel ask me to affirm. I decline to give you that instruction, and I have given you the contrary instruction. The point is refused.

"(8) The language of a tariff act is to be construed in the light of commercial usage and trade terms prevailing at the time of its passage. If, therefore, you should find from the evidence that there were known in the trade in 1883 two classes of articles, distinct from each other, the one called 'trimmings for hats, bonnets, and hoods,' and the other, 'linings for hats, bonnets, and hoods,' and the marcelines and chinas in suit were embraced in the latter class, your verdict should be for the defendant."

This point is affirmed if you find that the distinction here suggested existed in point of fact, not merely in name, and that the class of "trimmings" does not include linings.

"(9) The 'trimmings' of a hat, bonnet, or hood, according to the natural meaning of the word, are the articles used to trim it. I charge you that, in the absence of evidence of commercial usage to the contrary, the material used in lining the inside of a hat is not a trimming, within paragraph 448 of the tariff act of 1883; and, if you find the marcelines and chinas in suit to have been used only for lining the hat, your verdict must be for the defendant."

You will understand that this is the language of counsel; that they ask me so to charge. I decline so to charge you. The point is refused.

"(10) By the act of February 8, 1875, all manufactures of silk, or of which silk was the component material of chief value, irrespective of classification by previous laws or commercial designation, were dutiable at sixty per cent., provided such manufactures did not contain twenty-five per cent. or more in value of cotton. If you find, therefore, that the articles in suit are manufactures of silk, or that silk is the component material of chief value in them, then you should find for the defendant, unless the articles in suit contain twenty-five per cent. or more in value of cotton."

This point is refused.

"(11) The burden of proof is upon the plaintiff in this case to show that the classification of the articles in suit was erroneous, and that they are 'trimmings.' "

This point is affirmed, but in your findings of fact you should have regard to the preponderating weight of the evidence.

The plaintiffs have submitted to me certain points, most of which I will specifically answer, and some of which I will not answer, because I conceive that the proper answers are embodied in the general charge which I have submitted to you.

The first point was withdrawn by plaintiffs.

"(2) If the jury find that the articles in question are adapted to use and are used for various purposes other than for trimming hats, but also find that the use to which they are chiefly applicable is in making or ornamenting hats, bonnets, or hoods, the verdict should be for the plaintiff."

This point is affirmed if the articles are chiefly used in making or ornamenting hats, bonnets, and hoods.

"(3) The circumstance that the articles in question may be used for purposes other than the making or ornamenting of hats, bonnets, or hoods is not

controlling, and does not subject them to a higher rate of duty, if the fact be that the distinctive feature of the goods consists in their adaptation to use for making or ornamenting hats, bonnets, or hoods."

This point is affirmed, with the qualification in regard to the chief use contained in the answer to the second point.

"(5) If, upon the evidence in this case, the jury believe that the purpose and use of the goods in question was to trim other articles,—that is to say, to adjust or fit such other articles to their final use,—they are trimmings, within the meaning of the act; and if their chief or predominant use is to trim hats, bonnets, or hoods, your verdict should be for the plaintiff."

This point is affirmed.

"(6) Upon the evidence in this case the term 'trimmings' should not be given any technical or particular commercial meaning, but should receive its popular signification and natural import; and, if the articles in question are trimmings, in the general and popular sense of the term, and are used for making or ornamenting hats, bonnets, or hoods, then, if such use is predominant, and not exceptional, the verdict should be for the plaintiff."

This point is affirmed.

"(8) If the jury believe that in commercial usage there is a well-defined class of articles recognized to be trimmings used for making or ornamenting hats, bonnets, and hoods, and that the articles in question belong to that class, then plaintiffs are entitled to a verdict."

This point is affirmed, if the articles are chiefly used for making or ornamenting hats, bonnets, and hoods.

"(9) It is not essential that the articles in controversy should be specially mentioned in the tariff as subject to a duty according to their individual names. If they are found to be trimmings, according to the natural meaning of the word, and are used to trim either hats, bonnets, or hoods, and also for other purposes, then, if principally used for making or ornamenting hats, bonnets, or hoods, the verdict should be for the plaintiffs."

This point is affirmed.

"(10) In this case the specific names by which the articles in question are bought and sold in trade and commerce do not control their classification for dutiable purposes."

This point is affirmed. I have so instructed you in my general charge.

"(11) It is not essential that the various articles in question should be bought and sold under the specific name of 'trimmings.' The individual names by which the articles in question are designated in trade do not interfere with their classification according to their predominant use, if it be found that they are trimmings, chiefly so used for making or ornamenting hats, bonnets, and hoods."

This point is affirmed. I have already so instructed you in my general charge.

"(12) Unless it be shown that the word 'trimmings' is restricted in trade and commerce to some particular articles to the exclusion of all others, that term should be given its natural signification, which would include all articles, of whatever material composed, the predominant use of which is 'to trim.'"

I affirm that point. The case is now in your hands.