## MEYER et al. v. CADWALADER, Collector.[1]

(*Circuit Court, E. D. Pennsylvania.* July 3, 1891.)

1. CUSTOMS DUTIES—HAT TRIMMINGS.
    Whether the clause of the tariff act of 1883 providing for "braids, plaits, flats, laces, trimmings, tissues, willow-sheets, and squares used for making or ornamenting hats, bonnets, and hoods composed of straw, chip, grass, palm-leaf, willow, hair, whalebone, or any other substance or material not specially enumerated or provided for," includes certain gauzes, crepons, crepe, satins, and velvets, depends upon two consideratons, viz.: *First*, whether the particular goods in suit were "trimmings;" and, *second*, whether their chief use was for making or ornamenting hats, bonnets, and hoods.

2. SAME.
    The defendant having conceded that, under the evidence, the goods in suit were "trimmings," this question is narrowed to the single inquiry as to their chief use.

3. SAME—BURDEN OF PROOF.
    The burden of proof is upon the plaintiffs, and it is incumbent on them to establish their allegations by sufficient evidence.

4. SAME—EVIDENCE—COURSE OF TRADE.
    In considering the question of chief use, it is the duty of the jury to give more attention to the course of trade in the original distribution of the goods among those who import them than to the guesses of individuals as to the various uses to which the articles may be put by individual consumers.

At Law. *Assumpsit* to recover an excess of duty alleged to have been exacted by the collector upon certain velvet ribbons, gauzes, crepon, crepes, satins, and velvets imported by the plaintiffs in 1886. The facts are sufficiently set forth in the charge of the court. The defendant admitted that the duty collected on the velvet ribbons was excessive, and that there was due on that account $244.01, but denied that anything was due on the other items. The verdict was for plaintiffs for the amount admitted to be due on the velvet ribbons only.[2]

*Frank P. Prichard, Henry E. Tremain,* and *John G. Johnson,* (*Cyrus E. Woods, Harry T. Kingston, Augustus R. Stanwood, Charles Curie,* and *Alexander P. Ketchum,* with them,) for plaintiffs.

*W. W. Carr,* Asst. U. S. Atty., *John R. Read,* U. S. Atty., *William H. Taft,* Sol. Gen., and *W. P. Hepburn,* Sol. of Treasury, for defendant.

ACHESON, Circuit Judge, (*charging jury.*) This is an action brought by Meyer & Dickinson, importers, against the collector of the port of Philadelphia, to recover an alleged excess of duties paid under protest on certain goods entered at the custom-house on various days in the months of March, April, and May in the year 1886. While the collector is the defendant named on the record, the United States are the real defendants. It is conceded under the evidence that an excess of duty was collected from the plaintiffs on the article of velvet ribbons, and there is no dispute as to the amount of such excess. As to that item, therefore, you will render a verdict for the plaintiffs. This amount is admitted to be $244.01.

[1] Reported by Mark Wilks Collet, Esq., of the Philadelphia bar.
[2] A new trial was afterwards granted by the court on motion of plaintiffs. See 49 Fed. Rep. 32.

The articles which are here the subject of dispute are gauzes, crepons, crepes, satins, and velvets. These goods are made either wholly of silk, or of silk and cotton, silk being the component material of chief value. The collector assessed upon the goods, and required the plaintiffs to pay, 50 per centum *ad valorem*, under the last paragraph of Schedule L of the tariff act of March 3, 1883, (22 St. 510,) namely:

"All goods, wares, and merchandise not specially enumerated or provided for in this act, made of silk, or of which silk is the component material of chief value, fifty per centum *ad valorem*."

The plaintiffs claimed in their protest, and in this suit claim, that the goods were liable to only 20 per centum duty, under the provision in Schedule N of the act of March 3, 1883, which reads thus:

"Hats, and so forth, materials for,—braids, plaits, flats, laces, trimmings, tissues, willow-sheets, and squares, used for making or ornamenting hats, bonnets, and hoods composed of straw, chip, grass, palm-leaf, willow, hair, whalebone, or any other substance or material not specially enumerated or provided for in this act,—twenty per centum *ad valorem*."

The act of 1883 does not impose any duty upon the several articles which are here the subject of dispute; that is to say, gauzes, crepons, crepe, satins, and velvets, or any of them, by those names. The position of the plaintiffs is that those goods were classifiable under the clause of the act I have last read, which begins with the words, "Hats, and so forth, materials for," as being "trimmings" chiefly "used for making or ornamenting hats, bonnets, and hoods," and hence were subject to a duty of 20 per centum only. Whether the goods came under that clause, and were dutiable at the rate of 20 per centum, instead of at the rate of 50 per centum, as the collector held, is the question involved in this case.

This question (permit me here to say) should be approached and considered in a spirit of perfect fairness. Everything like prejudice or prepossession should be banished from the mind. We should all be animated by the earnest desire that the result reached shall be consonant with the law and in accordance with the evidence. If the plaintiffs' goods were rightly classified, they have no just cause for complaint. But if the collector was wrong in his classification, and exacted from the plaintiffs an excessive duty, then the government cannot honestly withhold from the plaintiffs the money so paid in excess of the legal rate of duty.

Two considerations enter into the decision of the question whether the plaintiffs' goods were dutiable under the 20 per centum clause of the act: *First.* Were the goods "trimmings?" *Secondly.* Were they chiefly used for making or ornamenting hats, bonnets, and hoods? If they were "trimmings," and their principal use was for making or ornamenting hats, bonnets, and hoods, then the plaintiffs are entitled to a verdict. But if they were not "trimmings," or, being "trimmings," if their principal use was not for making or ornamenting hats, bonnets, and hoods, the verdict should be for the defendants. This instruction applies to the goods as a whole, and to each particular kind here in dispute, and represented by the several samples. Your verdict might be in favor of the

plaintiffs as respects some of the articles, and in favor of the defendant as respects other articles, according to your findings of fact under the evidence as to the several articles involved in this controversy. Upon the proofs in this case the defendant concedes that all the articles here involved, namely, the gauzes, crepon, crepes, satins, and velvets, are "trimmings." There is therefore no longer any dispute on that point. You will then assume that all these articles belong to the general class of "trimmings," and your deliberation will be confined to the single inquiry as to their chief use. What was the chief use of these several articles? Was it for making or ornamenting hats, bonnets, and hoods? Or was their chief use for other purposes? In dealing with this subject you will carefully note that the question relates to the chief use of articles of the particular kinds and grades shown by the samples in evidence,—the numbered samples so often referred to by the counsel and the witnesses. The question is not as to the chief use of gauzes, crepon, crepes, satins, and velvets generally, but of goods the same as the samples. This is a point of primary importance, and in your consideration of the testimony must not be lost sight of.

I do not deem it necessary for me to recite at any length the evidence, or to attempt any particular analysis of it. The counsel of the respective parties have discussed the testimony very fully, and you have had the benefit of their views as to its bearing on the one side or the other of the question upon which you are to pass. The observations I shall submit to you will be brief and of a general nature. There is evidence in the case tending to show that the manufacture and trimming of hats, bonnets, and hoods is a very large industry in the United States; that there is a general class of articles known to the trade under the designation of "trimmings," specially adapted for and chiefly used for making or ornamenting hats, bonnets, and hoods, which class includes gauzes, crepes, satins, and velvets, and many other articles; that these articles are imported into this country in large quantities; and that there is in trade a class of persons who are dealers in these various articles under the general name of "hat trimmings." The plaintiffs have called and examined a large number of the importers of such goods and their employes, and also other persons in trade who deal in and distribute these imported articles among the original purchasers, namely, the millinery houses and dry goods houses and other dealers in hat trimmings. These witnesses have testified that the chief use of the articles here in dispute is in the making or ornamenting of hats, bonnets, and hoods. Some of those witnesses, not all of them, who are importers, are themselves interested in the question involved in this litigation, and that is a fact to be considered by you in estimating the weight to be given to their testimony. You have seen the witnesses last referred to, and have had an opportunity of observing their manner of testifying and their degree of intelligence, and it is for you to say what credit shall be given them.

The plaintiffs have also examined a number of other witnesses who are engaged in the business of manufacturing or trimming hats for men and women, and who are connected with that industry, and those wit-

nesses have testified that the chief use of the articles here in question is for making or ornamenting hats, bonnets, and hoods. All these witnesses, as it seems to me, (although this is a matter for you to determine,) by reason of their connection with the trade, have a good opportunity of knowing the use to which these articles are generally applied.

The plaintiffs also called another class of witnesses, three in number, who are connected with the customs service of the United States, namely, Mr. Sharretts, a member of the board of general appraisers, Mr. Corbett, assistant appraiser at the port of New York, and Mr. Clark, assistant appraiser of the port of Philadelphia. You will recall the testimony of these witnesses. I ought, however, to add that while Mr. Sharretts testified that the chief use of gauzes, satins, and velvets, represented by the samples numbered 4, 5, 9, 11, and 12, was for making or ornamenting hats, bonnets, and hoods, he expressed the opinion that the crepon and crepe, represented by samples numbered 6 and 8, were not chiefly used for that purpose.

The defendant has examined a very large number of witnesses belonging to various trades and occupations, dry goods men, dressmakers, manufacturers of novelties, undertakers, and others, who have testified that the chief use of the goods here in dispute was for purposes other than that of making or ornamenting hats, bonnets, and hoods. These witnesses, as you will recall, testified that these goods were chiefly used for making or trimming dresses and fancy articles of different kinds, and for various other special purposes by them named. A great many of the defendant's witnesses, perhaps the greater number of any class testifying, are connected with the dry goods trade, and acquired the knowledge upon which they testify in that line of business. They speak more particularly of satins and velvets, and testify as to their comparative sales of such articles to dry goods houses and to millinery houses. But you will remember that some of them state that many of the large dry goods houses to which they sell satins and velvets have millinery departments; and, further, that throughout the country, in the smaller towns and communities, those in the dry goods business supply the local demand for millinery articles. Do these witnesses, then, certainly know the ultimate use to which the satins and velvets are applied? Some of them admit that they do not know, and have no certain means of knowing.

The article of velvets calls for special observation. Witnesses on both sides of the case speak of and describe "millinery velvets," which they state are particularly adapted for trimming hats, bonnets, and hoods. There seems to be no difference between the witnesses on the two sides of the case as to the distinguishing characteristics of millinery velvets. It is testified that they are made of lighter material and are softer and more pliable than dress velvets and velvets for other uses. The witnesses further state that the millinery velvets are intended more for show than for wear. Some of the millinery velvets, the evidence tends to show, are of a low grade and price, and others are of a much higher grade and price.

The velvets, of which we have samples numbered 11 and 12, are undoubtedly of a low grade, and many witnesses state that they are light, soft, and pliable, and belong to the low grade of millinery velvets. You can yourself handle the samples, and thus form some judgment as to whether they do not have the characteristics which all the witnesses ascribe to millinery velvets. Now, if these velvets, represented by samples Nos. 11 and 12, are millinery velvets, (and whether they are or not is for your determination,) the fact ought to be taken into consideration in connection with the testimony of those witnesses who testify that their chief use is for millinery purposes, or to make and trim hats, bonnets, and hoods. For, if they are millinery velvets, what would naturally and probably be their chief use?

In determining the question of chief use,—which is the only question now open,—you should give effect to and be governed by the preponderating weight of the evidence in the case. The weight of the evidence does not always lie on the side having the greater number of witnesses. Only such value should be given to the opinion of any witness as it deserves by reason of his means of knowledge, whereby he can form a correct judgment. Regard should be had not only to the character, disinterestedness, and intelligence of the witnesses, but also to their opportunities of becoming acquainted with the subject-matter now under investigation, namely, the chief use made of the several articles involved in this controversy.

I will now read to you and answer certain points which have been submitted to me by counsel for the respective parties. I am requested by defendant's counsel to charge you as follows:

"(1) Your verdict must be for the defendant if you believe that the goods and merchandise in suit were chiefly used, in March, 1883, for purposes other than for making and ornamenting hats, bonnets, and hoods, even if you believe that they were 'trimmings' used for making and ornamenting hats."

That point is affirmed.

"(2) It is the purpose for which these articles are chiefly used that determines their dutiability, within the meaning of this clause of the tariff act. It would not be a proper construction of the meaning of this act to say that, because certain articles are indifferently adapted for use for different purposes, either of these purposes may determine the rate of duty. It is the predominant use to which these goods and merchandise are applied that determines their character. If you find the goods and merchandise to be chiefly used for other purposes than for making or ornamenting hats, bonnets, and hoods, you will find for the defendant. The question is purely one of fact, namely, what is the predominant use to which these articles are devoted?"

That point is taken from the charge of my distinguished predecessor in a cause tried here in this court, and I affirm it, and give you the instruction prayed for by the point.

"(3) The burden of proof is upon the plaintiffs in this case to show that the classification of the goods and merchandise in suit was erroneous, and that they are 'trimmings,' chiefly used for making or trimming hats, bonnets, or hoods."

This point is affirmed. The meaning of the point is simply this: that it is incumbent upon the plaintiffs to establish by sufficient evidence the allegations made by them, and upon which their case depends.

I am asked by plaintiffs' counsel to answer a number of points, but I shall answer but four of them, because the others, as I understand them, relate to the question whether these articles are trimmings, which has been eliminated from the case by the concessions of the defendant at the close of the testimony:

"(1) If the jury find that any of the articles in controversy are hat materials, so known and recognized in trade and commerce, and are distinctively adapted for as well as chiefly used as trimmings in making or ornamenting hats, bonnets, and hoods, the verdict should be for the plaintiffs upon such articles."

The point is affirmed.

"(2) If the jury find that any of the articles in question are adapted to use and are used for various purposes other than for trimming hats, but also find that the use to which they are chiefly applicable is in making or ornamenting hats, bonnets, and hoods, the verdict should be for the plaintiffs upon such articles as are chiefly so used."

This point is affirmed.

"(3) The circumstance that any of the articles in question may be used for purposes other than the making or ornamenting of hats, bonnets, and hoods is not controlling, and does not of itself subject them to the higher rate of duty, if the fact be that the distinctive feature of the articles consists in their adaptation to use for making or ornamenting hats, bonnets, and hoods, and that they are chiefly so used."

The point is affirmed.

"(18) In considering the question of chief use, it is your duty to give more attention to the course of trade in the original distribution of the goods among those who import them than to the guesses of individuals as to the various uses to which the articles may be put by individual consumers."

The point is affirmed.

And now, in conclusion, I have only to remind you that the single question submitted to you is, what is the chief use of the several articles represented by the samples Nos. 4, 5, 6, 8, 9, 11, and 12? and as you determine that question as respects each of these articles so should your verdict be. I commit the case to you, confident that it will receive the careful consideration which it deserves, and that your verdict will be in accordance with the law and the evidence in the case.