TRAIN et al. v. UNITED STATES.

(Circuit Court, S. D. New York. December 28, 1900.)

No. 2,929.

CUSTOMS DUTIES—OLD GUNNY CLOTH.

Old gunny cloth or cotton bagging, formerly used for covering cotton bales in ragged, dirty, and partly rotten pieces, to be used chiefly as paper stock for making Manilla paper only, is dutiable under Tariff Act 1897, par. 463, as waste, not specially provided for, at 10 per cent. ad valorem; it being shown that, besides being used for the making of paper, great quantities of it are used for patching cotton bales and for conversion into yarns or for making jute shoddy.

Appeal by the importers from a Decision of the Board of United States General Appraisers.

Albert Comstock, for importers.

D. Frank Lloyd, Asst. U. S. Atty.

TOWNSEND, District Judge. Paragraph 632 of the free list of the tariff act of 1897 is as follows:

"632. Paper stock, crude, of every description, including all grasses, fibers, rags (other than wool), waste, including jute waste, shavings, clippings, old paper, rope ends, waste rope, and waste bagging, including old gunny cloth and old gunny bags, fit only to be converted into paper."

The merchandise herein is old gunny cloth or cotton bagging, which, having been used for covering cotton bales, has been removed, and in ragged, dirty, and partly rotten pieces has been imported into this country in 500-pound bales, to be chiefly used as paper stock for making Manilla paper only. The importer, therefore, contended that this merchandise was free, under said paragraph 632. The board of general appraisers, in a careful and exhaustive decision, overruled the classification of the merchandise by the collector as "bagging for cotton, gunny cloth, * * * suitable for covering cotton," under paragraph 344 of said tariff act of 1897, and held that it was dutiable, under paragraph 463 of said act, as "waste, not specially provided for," at 10 per cent. ad valorem. The grounds of contention herein have been exhaustively presented by testimony and arguments. The board of general appraisers has found that "the merchandise consists of old gunny bags or waste bagging, made of jute, used chiefly for paper stock." The case is complicated by the fact that the pieces of gunny cloth differ so greatly in size that, while the larger ones would be suitable for covering cotton and might properly have been included under paragraph 344, the smaller pieces are not fit for such purpose. There is no evidence to show in what proportions the different sized pieces are found, except in the general statement that the average size is about a square yard. Cotton bales vary in size, being generally 5 feet long and from $2\frac{1}{2}$ to $1\frac{1}{2}$ feet in height and width. In these circumstances, I think the material of which these bales as a whole are composed is not suitable for covering cotton, although it is suitable to be used for patching on cotton bales. On behalf of the importer, it is shown that for more than 20 years the article has been designated for free entry by name, character, and use; that, if the

construction adopted by the board as to its fitness for paper stock be adopted, it will practically nullify the effect of nearly all the paragraph as applied to various classes of waste; that the uses of this merchandise, other than for conversion into paper, are not over 5 per cent. of the total use, and that some of these uses are for purposes of adulteration; and therefore it is strenuously argued, inter alia, that this does not show a commercial fitness for other purposes, and that the fair meaning of "fit only to be converted into paper" means only when of such sorts as are fit to be converted into paper. On the other hand, it appears that the probable reason why this article has always been admitted to free entry was either because it had not been previously so extensively used for purposes other than making paper, or because the officers of the government had not become aware of such other uses. In any event, it now appears that, in addition to the use for patching cotton bales and for conversion into yarns to adulterate goods or make shoddy,—uses which perhaps need not be here considered,—the merchandise is also used for making mattresses and sweat pads for horses, for lining cheap coats, and for reconversion into bagging for covering cotton, and that the longer pieces are used for covering cotton bales, and the shorter pieces for making what is known as "plumbers' oakum," a commercial article employed in stopping leaks in water pipes. Over 1,500 tons of this bagging is annually used for this latter purpose. If, therefore, there be excluded from consideration the use of great quantities of this merchandise for patching cotton bales, for conversion into yarn to make cheap horse blankets and cheap carpets, and for making jute shoddy and mattresses, the fact still remains that this waste is fit for, and is substantially commercially used in, making new bagging, plumbers' oakum, sweat pads, horse collars, and other articles. In these circumstances, I concur in the opinion of the board of general appraisers, that the practical uses of the goods for purposes of manufacture, other than conversion into paper, are so relatively substantial and significant as to take the goods out of their former classification. That certain factories buy large quantities in each year, and use the same in the manufacture of a commercial article, seems to conclusively establish the fitness for that purpose, and that it is used for several such purposes seems to negative the contention that it is fit only for use as paper stock. The evils attendant upon the classification of this merchandise for duty which have been forcibly presented by counsel for the importers cannot be remedied by judicial legislation, but only by the legislative branch of the government. Inasmuch, therefore, as this merchandise is a waste, and is no longer "fit only for paper stock," it properly falls under the classification of "waste, not specially provided for." The decision of the board of general appraisers is therefore affirmed.