WILBUR-ELLIS CO. ET AL. *v.* UNITED STATES (No. 3389)

---

[1] T. D. 44762.

United States Court of Customs and Patent Appeals, March 25, 1931

*Frank L. Lawrence* (*Martin T. Baldwin* of counsel) for appellants.
*Charles D. Lawrence*, Assistant Attorney General (*James R. Ryan* and *Ralph Folks*, special attorneys, of counsel), for the United States.

[Oral argument February 4, 1931, by Mr. Baldwin and Mr. Folks]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court overruling two protests of appellants against the classification for duty purposes by the collector at the port of Seattle of certain shipments of fish meal from Canada.

The issues herein are concisely stated in the decision of the lower court, as follows:

\* \* \* The merchandise in protest 346562–G consists of fish-cake meal made from fish cake, the residue from the expression of the oil from pilchards or sardines, and that from the expression of the oil from salmon. The merchandise in protest 178437–G consists of fish-cake meal made from fish cake, the residue from the expression of the oil from dogfish. The appraiser states that the merchandise in protest 346562–G is used as a feed for livestock and chickens, also as a fertilizer, and duty was assessed thereon at the rate of 20 per centum ad valorem under paragraph 1459, Tariff Act of 1922. The appraiser states that the merchandise in protest 178437–G is used as an ingredient in poultry and stock-feed mixtures, and duty was assessed thereon at the rate of 20 per centum ad valorem under paragraph 1459. The plaintiffs claim in both protests that the merchandise is properly entitled to free entry under paragraph 1583, as manure and fertilizers, or under paragraph 1629, as oil cake or oil-cake meal, or, if dutiable, it is dutiable at the rate of 10 per centum ad valorem under paragraph 1457 as waste, or at the same rate under paragraph 1459 as unenumerated, unmanufactured articles.

At the trial the plaintiffs restricted their claims to those made under paragraph 1583, 1629, or 1575. The paragraphs of the law in question read as follows:

PAR. 1583. Guano, basic slag, ground or unground, manures, and all other substances used chiefly for fertilizer, not specially provided for: * * *

PAR. 1629. Oil cake and oil-cake meal.

PAR. 1575. Fish imported to be used for purposes other than human consumption.

PAR. 1459. That there shall be levied, collected, and paid * * * on all articles manufactured, in whole or in part, not specially provided for, a duty of 20 per centum ad valorem.

The lower court held that the merchandise in question was not "oil cake" or "oil-cake meal" and therefore did not come within the provisions of paragraph 1629, and that it was not "fish imported to be used for purposes other than human consumption," and therefore did not come within the provisions of paragraph 1575.

As to the applicability of paragraph 1583, the lower court found that immediately prior to the passage of the Tariff Act of 1922 the merchandise in question was chiefly used for the purpose of fertilizer. The court, however, held as follows:

The test to be applied to the classification of this fish meal, not being named in the Tariff Act of 1922 *eo nomine* or generally, is: What was it, in a tariff sense, when it was imported, and in considering its classification under paragraph 1583, as substances used chiefly for fertilizer, we would have to consider whether at the time of importation it was a substance used chiefly for fertilizer.

From the evidence presented we are in doubt as to the chief use of the classes of fish meal to which the importations belong. The classification of the collector of the fish meals covered by the protests under consideration imposed upon the importers the burden of proving that fish meals of the grades imported were chiefly used immediately prior to or at the time of importation for fertilizer, and having failed to do so, we hold the fish meals in question properly dutiable at the rate of 20 per centum ad valorem under paragraph 1459, Tariff Act of 1922, as articles manufactured in whole or in part, not specially provided for, rather than free of duty under paragraph 1583 of the same act as substances used chiefly for fertilizer.

Appellants' assignments of error principally relied upon here are that the lower court erred—

(6) In holding that said phrase [in paragraph 1583], "substances used chiefly for fertilizer," applies to chief use at the time immediately prior to or at the time of importation.

(7) In not holding that said phrase applies to use at and prior to enactment of said tariff act.

Appellants here do not contend that, on the record made, paragraph 1583 is applicable to the merchandise in question if chief use is to be determined as of the date of importation or immediately prior thereto.

We therefore have before us the very important question of law, whether, when classification of designated merchandise under a given paragraph is expressly declared to be dependent upon chief use of

the merchandise, such use is to be determined as of the date of importation or immediately prior thereto, or as of the date of the passage of the tariff act in which the paragraph is contained.

Appellants contend that where merchandise is classifiable under a given paragraph according to chief use, if it definitely appears that the chief use of such merchandise is different at different periods of time, the use for tariff classification is use at the time of enactment of the tariff act. The Government, on the other hand, contends that in such cases the controlling factor is chief use at the time of importation of the merchandise.

Both appellants and the Government rely upon decisions of the Supreme Court of the United States, and of this and other courts, in support of their respective contentions. Appellants rely principally upon the case of *Rossman* v. *Hedden*, 145 U. S. 561, in which the question at issue was whether certain imported tiles were dutiable under a provision for "paving tile." In that case, in the lower court, witnesses were permitted to testify as to the use of tiles prior to March 3, 1883, which was the date of the passage of the tariff act there involved, but were not permitted to testify to such use after that date. The Supreme Court concluded its opinion with the following:

> Finally, we are of opinion that the court did not err in excluding evidence as to the purposes for which similar tiles were used after March 3, 1883, or for what purposes they were intended to be used or were imported, at the time of the trial. This came within the rule that the classification is to be determined as of the date when the law imposing the duty was passed. *Curtis* v. *Martin*, 3 How. 106,109; *American Net and Twine Co.* v. *Worthington*, 141 U. S. 468,471.

The cases cited by the court in the above quotation both relate to commercial designation. Appellants contend that this clearly indicates that the same rule should be applied in classification of merchandise according to use, as is applied to classification according to commercial designation.

It is to be observed, however, that the tariff provision under consideration in the *Rossman* case did not contain the word "use" or the words "chief use," but the question under consideration was the common meaning of the words "paving tile," an *eo nomine* designation, and the effect of the decision of the court is that the common meaning of these words is to be arrived at as of the date of the passage of the tariff act.

This court has followed this rule in cases of *eo nomine* designation, where the words "chief use" were not declared in the law to be a factor in classification. Such was the case in *Goldsmith's Sons* v. *United States*, 13 Ct. Cust. Appls. 69, T. D. 40932, and in *United States* v. *Downing et al.*, 16 Ct. Cust. Appls. 556, T. D. 43294. Most of the cases relied upon by appellant are of this character.

It is true, however, that the cases of *United States* v. *Nichols et al.,* 46 F. 359; *Meyer* v. *Cadwalader*, 49 F. 19; and *Meyer* v. *Cadwalader*, 49 F. 26, support the contention made by appellants.

The Government, in support of its contention that chief use at the time of importation, and not chief use at the time of the passage of the tariff act, should control classification which by law is made dependent upon chief use, relies upon the case of *Magone* v. *Heller*, 150 U. S. 70, which involved the classification of potash sulphate used extensively as manure or in the manufacture of manure. It was classified by the collector for duty at 20 per centum ad valorem under Schedule A, chemical products, Tariff Act of March 3, 1883. It was claimed by the importer that the merchandise was free of duty under a provision in the free list of said tariff act, reading as follows: "Guano, manures, and all substances expressly used for manure."

The issue there was whether the merchandise in question was a substance "expressly used for manure," and the issue now before us does not seem to have been raised in that case. The court, in the course of its opinion, said:

Congress, for the promotion of agriculture, evidently intended that if a substance, which might be described by the name of an article subject to duty under Schedule A, was within the description, in the free list, of use for fertilizing the ground, it should be exempt from duty.

In discussing the proper construction of the provision "all substances expressly used for manure," the court said:

The qualifying words are not "expressly intended for use as manure," or "expressly imported for use as manure," or "in fact to be used as manure," and can not therefore be tested by the intention of the importer, or by the use to which the goods are afterwards actually put. But the words are "expressly used for manure," and the question whether the imported articles come within the description *is to be determined at the time of importation.* [Italics ours.]

While this language clearly supports the Government's contention, it will be observed that the court was considering whether the intention of the importer as to use, or subsequent use by him of the merchandise, should govern the classification, or whether it should be governed by the use of merchandise of that character at the time of importation. We do not, however, consider that the question here raised was authoritatively settled in that case, because use at the time of the enactment of the tariff law there involved was apparently not considered by the court.

In the case of *Train et al.* v. *United States*, 107 F. 261, the question at issue was the proper classification of old gunny cloth or cotton bagging under the Tariff Act of 1897. Paragraph 632 of the free list of said act provided for " * * * waste bagging, including old gunny cloth and old gunny bags, fit only to be converted into paper." It appears from the opinion that for more than 20 years merchandise

of the character of that in question had been designated for free entry as "fit only to be converted into paper." The court found that there was a substantial use of the merchandise for purposes other than making paper. It made no finding as to whether such other uses had arisen since the enactment of the tariff act or had existed previous thereto.

After reciting specific uses other than for making paper, the court said:

In these circumstances I concur in the opinion of the Board of General Appraisers that the practical uses of the goods for purposes of manufacture, other than conversion into paper, are so relatively substantial and significant as to *take the goods out of their former classification.* [Italics ours.]

We think it is fairly to be inferred from the opinion that if it had been affirmatively shown that the practical uses of the merchandise referred to in the above quotation had arisen after the passage of the Tariff Act of 1897, it would not have affected the conclusion of the court there reached. This case was affirmed without opinion in 113 F. 1020.

The Government also relies upon the decision of this court in the case of *Pacific Guano & Fertilizer Co. et al.* v. *United States,* 15 Ct. Cust. Appls. 218, T. D. 42240. In this case the same provisions of paragraphs 1459 and 1583 of said tariff act were involved as are here under consideration. The merchandise was known as "ground tankage" which, it was claimed, was chiefly used as fertilizer. This court, in its opinion, said:

* * * we can not hold that high-grade tankage was *immediately prior to the importation of the goods in issue* chiefly used in the United States as fertilizer. [Italics ours.]

While it is true, as the Government contends, that the court in that case evidently considered the use of the merchandise at the time of importation as the determining factor in its classification under paragraph 1583, it is also true that the question now before us was not raised or considered in that case.

The Government also cites the decision of the United States Customs Court in the case of *Geo. S. Bush & Co. (Inc.)* v. *United States,* T. D. 44144, referred to in the opinion of the lower court in the case at bar and followed in its decision. In that case, in a well-considered opinion by Judge Young, who wrote the opinion in the case before us, applicable authorities are reviewed at length. The case of *United States* v. *Downing et al., supra,* also relied upon by the Government, involved the classification of certain leather. It was there held that classification of a new article, not in existence at the time the tariff act was passed, should be governed by its chief use at the time of

importation. In its opinion this court, speaking through Presiding Judge Graham, said:

It is well established that tariff statutes are made for the future as well as for the present and that the statutory term "shoe leather" reaches out and embraces subsequent merchandise, the existence of which was not known to commerce prior to the effective date of the Tariff Act of 1922. * * *

This case, however, is not controlling here because it is conceded in the case at bar that the merchandise here in question was known to commerce prior to the Tariff Act of 1922.

In the case of *Cadwalader* v. *Wanamaker*, 149 U. S. 532, the importer claimed the merchandise there involved to be dutiable under a provision of the Tariff Act of March 3, 1883, which provided a certain rate of duty upon trimmings used for making or ornamenting hats. The question at issue was the use of the trimmings there involved. Although the opinion does not expressly so state, the fact appears to be that the evidence in the case related to use at the time of importation and not at the time of the effective date of the Tariff Act of 1883. This appears from the report of the argument for the Government, found on page 535, from which we quote:

* * * Attention is called to the fact that no attempt was made to limit this inquiry to the date of the act of 1883, and prior thereto (*Rossman* v. *Hedden*, 145 U. S. 561, 570), but in the cases decided against the Government the inquiry related to the date of the trial.

The court in its opinion made no reference to this contention of the Government and affirmed the judgment of the court below, which apparently was based upon testimony as to the use of goods of the character there in question at the time of the importation of the goods there involved.

After considering all of the authorities cited by the respective parties, and others which we have examined, we are of the opinion that the question here presented has not been conclusively settled by any decision of the Supreme Court of the United States or of this court.

The provision here in question, making free of duty "Guano, basic slag, ground or unground, manures, and all other substances used chiefly for fertilizer, not specially provided for: * * *," was intended to promote agriculture.

In the case of *United States* v. *Swift & Co.*, 14 Ct. Cust. Appls. 222, T. D. 41706, this court said:

It is plain that the Congress intended by the provisions of paragraph 1583 to encourage the importing of substances which were chiefly used for fertilizing the soil. It is equally plain that it was not intended to permit substances to be imported free of duty under the provisions of paragraph 1583, which were not of a class which was chiefly used for fertilizer.

An examination of the cases decided by this court discloses that where classification of an article is by the law made dependent upon

chief use, evidence of such use at the time of the importation of the merchandise involved has been accepted, and the question determined upon such evidence. *Pacific Guano & Fertilizer Co.* v. *United States, supra; United States* v. *Swift & Co., supra; Katzenstein & Keene (Inc.)* v. *United States,* 14 Ct. Cust. Appls. 143, T. D. 41674. Many other cases might also be cited to the same effect.

However, as before stated, we do not consider these cases as controlling our decision here, because the particular question now under consideration was not raised in any of them. They do, however, give some aid to us as evidencing a natural construction of tariff statutes providing for classification of an article according to chief use.

As heretofore indicated, it is well established that tariff statutes are made for the future as well as for the present. *United States* v. *Downing et al., supra.*

While the common or commercial meaning of an *eo nomine* designation in a tariff act must be determined as of the effective date of that act, we think that where it is provided that an article shall be classified under a particular provision of a tariff law if chiefly used for a specified purpose, a different rule should prevail. In such case, if there be an *eo nomine* designation, the common meaning thereof must be determined as of the date of the enactment of the tariff act, but if it is further provided that the thing designated shall be classified under a given provision only if chiefly used for a specified purpose, the question of use should be determined, not as of the effective date of the tariff act but as of the date of the importation of the particular merchandise involved or immediately prior thereto.

To illustrate, in the case of *Goldsmith's Sons* v. *United States, supra,* certain leather classified as football leather was before this court for consideration. It was there held that the meaning of the term "football leather," for tariff purposes, was the meaning which it had at the time of the enactment of the Tariff Act of 1922, and that the classification of an article, known to the trade and classifiable as football leather at that time, could not be changed by a subsequent different use. However, if the provision there in question had included, in addition to the *eo nomine* designation of football leather, the further provision that it should be classified under the paragraph there involved if chiefly used in making footballs, the question here before us would then have been presented.

We are of the opinion that Congress, in providing free entry for "manures, and all other substances used chiefly for fertilizer, not specially provided for," intended to draw into this classification substances of a class used chiefly for fertilizer, not specially provided for, when such substances were, at the time of importation or immediately prior thereto, so chiefly used, regardless of whether such use

obtained at the time of the passage of the act or arose thereafter, and intended to exclude from such classification such substances when they ceased to be so chiefly used, even though they may have been so used at the time of the passage of the act.

We believe that this construction is in accord with the general purpose of tariff laws and makes effective the intention of Congress with regard to the particular paragraph here under consideration.

We therefore hold that, appellants having failed to establish that merchandise of the character here in question was, at the time of importation of the merchandise here involved or immediately prior thereto, chiefly used for fertilizer, it is not classifiable under said paragraph.

Appellants further contend that if it shall be held that the merchandise in question is not classifiable as a substance "used chiefly for fertilizer," it should be classified under the same paragraph as a manure.

A very similar contention was made in the case of *United States* v. *Swift & Co.*, *supra*. There the merchandise involved was "tankage," which was claimed by the importer to be chiefly used for fertilizer. There, as here, it was claimed alternatively that if the merchandise should be held not to be a substance used chiefly for fertilizer, classifiable as such under said paragraph 1583, it was manure and classifiable as such under the same paragraph. In disposing of this contention this court said:

> The appellees contend that the merchandise in its imported condition is manure, and that, therefore, the question of chief use is not necessarily involved. The following definitions of the word "manure" are cited in the brief of *amicus curiæ*. We quote therefrom:
>
> > Any substances applied to soil to render it more fertile, as dung, decaying animal or vegetable matter, and certain minerals.—Standard (1914).
> > Any material which fertilizes land; a fertilizing substance.—Webster (1923).
> > Any substance added to the soil with the view of rendering it more fertile.—Century (1906).
>
> It is unnecessary to discuss this question at any great length. There was no effort made on the trial to show that the merchandise, in its condition as imported, was used as fertilizer, or that it was fit for such use. But even if it had been shown that, as imported, it was suitable for such use, would that evidence be sufficient to prove that tankage, ground into the form of meal, advanced in condition for its ultimate use—that of stock and poultry feed—was, after all, nothing but manure? We think not. The Congress has distinguished between manure and substances chiefly used for fertilizer. It probably was not thought by the legislative branch of the Government that manure would have any other important or substantial use than that of fertilizing the soil.

We think the statement quoted as to the construction to be given to the word "manures" in said paragraph is applicable here, and for the reasons stated we hold that the merchandise here involved is not manure within the meaning of that word as used in said paragraph 1583.

We next come to consider appellant's alternative claims of classification under paragraph 1629 or paragraph 1575 of said tariff act.

Paragraph 1629 provides for free entry of "oil cake and oil-cake meal." Appellants contend that the merchandise here involved is "oil-cake meal." The meaning of these words, as used in said paragraph, received consideration by this court in the case of *United States* v. *Wilfred Schade & Co.*, 16 Ct. Cust. Appls. 366, T. D. 43092. It was there held that, in common meaning, the term "oil-cake meal" does not include an animal product such as fish-cake meal. The same conclusion was reached in the case of *United States* v. *Geo. S. Bush & Co. (Inc.)*, 16 Ct. Cust. Appls. 406, T. D. 43131. We find no reason for overruling or modifying the holding in said cases, and therefore the merchandise here involved can not be classified under said paragraph 1629.

There remains the alternative claim of appellants that the merchandise is classifiable under paragraph 1575 as "fish imported to be used for purposes other than human consumption." We are clear that the merchandise can not be so classified. It was expressly held by this court in the case of *United States* v. *Bush & Co., supra,* that dogfish oil cake, which was the residue of the whole dogfish after the same had been cooked and the oil expressed therefrom, was not fish under said paragraph 1575.

We find no error in the decision of the court below and its judgment herein is *affirmed.*