TRAIN–SMITH CO. v. UNITED STATES.

(Circuit Court, S. D. New York. June 5, 1905.)

No. 3,347.

CUSTOMS DUTIES—CLASSIFICATION—RAGS—OLD BAGGING.

*Held,* that the provision for "rags" in paragraph 648, Tariff Act July 24, 1897, c. 11, § 2, Free List, 30 Stat. 201 [U. S. Comp. St. 1901, p. 1687], includes coarse pieces of jute bagging which are in their condition as torn from cotton bales, and are not sufficiently large and otherwise suitable for other use than as mere rags in stuffing and as paper stock.

On Application for Review of a Decision of the Board of United States General Appraisers.

In the decision in question G. A. 5,265, T. D. 24,172, the Board of General Appraisers affirmed the assessment of duty by the collector of customs at the port of New York. Note U. S. v. Pearson (C. C.) 131 Fed. 571, affirmed in (C. C. A.) 137 Fed. 1021.

Comstock & Washburn (Albert H. Washburn, of counsel), for importers.

D. Frank Lloyd, Asst. U. S. Atty.

TOWNSEND, Circuit Judge. The goods contained in this importation comprise coarse pieces of jute bagging, with ragged edges, in the condition in which they were torn from cotton bales, which pieces had been originally used in their entirety as coverings for cotton bales. They were invoiced and are known indifferently as bagging, old waste bagging, old gunny bagging, and rags. They were assessed for duty under paragraph 463 of the act of July 24, 1897, c. 11, § 1, Schedule N, 30 Stat. 194 [U. S. Comp. St. 1901, p. 1679], as "waste, not specially provided for," and are claimed as free under paragraph 648 (section 2, Free List, 30 Stat. 201 [U. S. Comp. St. 1901, p. 1687]), as "rags, not specially provided for." The question thus raised is one of uncertainty, in the first place, by reason of the difficulty in ascertaining the size and character of these pieces of jute. The original shipment was gone, without

140 F.—8

fault on the part of the importer, before the board requested the production of a sample. Although a later bale was produced, which the importer testified was of exactly the same class, it was objected to by counsel for the government, and, although it was received in evidence, it was not examined. The board found that "the pieces of old bagging contained in the various bales under consideration vary in size; that the smallest piece was about one foot square, and that the largest was about two and one-half feet long · by about one and one-half wide." Apparently these pieces were torn and ragged and dirty, and did not substantially differ from the merchandise passed upon by the board and this court and the Circuit Court of Appeals in Train v. United States, 107 Fed. 261, affirmed 113 Fed. 1020, 51 C. C. A. 623, except that the pieces were smaller, and were selected as will hereafter appear.

The board further found as follows:

"If a portion of the goods be conceded to be rags, there is unquestionably a large and substantial portion of the importations in question which does not fall within this category, some of the pieces being of sufficient dimensions to be used for patching cotton bales, and for other purposes than those for which mere rags are adapted."

And it held that, as the merchandise contained free and dutiable goods indiscriminately mixed, the collector would be justified in assessing the whole importation as an entirety at the rate applicable · to the dutiable merchandise. If the evidence produced before the board supported this statement as to the possibility of the use of the pieces for patching cotton bales, etc., the holding of the board should not be disturbed. I find no such testimony. A careful analysis of the conflicting and indefinite testimony seems to show that the refuse pieces of gunny bags are generally sorted and divided abroad into two classes, the one comprising pieces selected because they are sufficiently large and whole and clean and smooth-edged to be used for purposes other than as mere rags for stuffing or paper stock, the other the pieces available only for the latter purposes; and that the bales in question contained pieces of the latter class; and that such pieces are regarded, and denominated in common speech, as rags, and in fact are rags under the dictionary definitions. The testimony that they are not commercially known as rags appears to be based on the fact that they are not generally billed or sold as rags, but it appears from the testimony of all the witnesses except one that this is because there is no general commercial designation of rags as rags, but that each kind of rag is sold under its appropriate specific name, such as cotton tares, gunny bagging, etc. It appears from the testimony of the government witness Pirnie that, where collections are sent to this country thus sorted abroad, the bales which represent the poorer pieces would be ragged, and would not contain pieces large enough and sound enough to use for any purpose other than as paper stock or stuffing. It further appears from the testimony of the witness Waring that on the class of such merchandise which is fit for use for other purposes duty is regularly paid without protest on the part of the importer, and that the pieces which constitute the class

of goods here in question are sold as an entirety for paper stock, and that it is not commercially practicable to select certain pieces therefrom and use them for other purposes. This testimony is supported by the government witness Salomon. The whole testimony tends to show that the pieces comprised in the merchandise here in question are not of such a character as to be capable of use for patching purposes, and that, even though some of the pieces might be as large as those considered in the former case, yet that by reason of their ragged edges and torn and dirty condition they are fit only to be used as rags. In these circumstances I think it is sufficiently shown that practically all the pieces selected are rags; that where pieces are not rags under the definition as given above, they are not packed in those bales, because they bring a higher price when packed to be imported as fit for other purposes; that the principle of selection by which the two classes of rags are thus separated conforms as to the class here in question to the dictionary and ordinary definition of rags, as given by one of the witnesses for the government, as "an old, torn piece, small or large, of any woven fabric, which has subserved one purpose, and comes into the market as secondhand material," and that these pieces are unfit for patching bagging. The conclusion reached, therefore, is that the merchandise in question did not contain pieces which should be assessed for duty, and that the whole bale was free as rags.

The decision of the Board of General Appraisers is reversed.