TENEMENT HOUSE DEPARTMENT OF CITY OF NEW YORK v. HUTKOFF.

(Municipal Court of City of New York, Borough of Manhattan, Third District. March 4, 1914.)

1. HEALTH (§ 38*)—TENEMENT HOUSE LAW—ACTION TO RECOVER PENALTY—SUFFICIENCY OF EVIDENCE.

Evidence, in an action to recover a penalty for the violation of the Tenement House Law (Laws 1909, c. 99; Consol. Laws, c. 61) § 39, prohibiting the storing of rags in tenement houses, *held* to show that the pieces of cloth stored in a tenement house by defendant were stored with a view to commercial traffic.

[Ed. Note.—For other cases, see Health, Cent. Dig. § 37; Dec. Dig. § 38.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. HEALTH. (§ 32*)—TENEMENT HOUSE LAW—"RAGS."

   The term "rags," as used in the Tenement House Law (Laws 1909, c. 99; Consol. Laws, c. 61) § 39, prohibiting the storing of rags in tenement houses, includes fragments of cloth, whether new or old, and though composed in part of wool.

   [Ed. Note.—For other cases, see Health, Cent. Dig. § 32; Dec. Dig. § 32.*

   For other definitions, see Words and Phrases, First and Second Series, Rags.]

Action by the Tenement House Department of the City of New York against Nathan Hutkoff, to recover a penalty. Judgment for plaintiff.

Frank L. Polk, Corp. Counsel, of New York City (John P. O'Brien and F. E. V. Dunn, both of New York City, of counsel), for plaintiff.

Goldfogle, Cohn & Dorf, of New York City (Charles L. Cohn, of New York City, of counsel), for defendant.

NOONAN, J. The action is brought to recover the sum of $250, as a penalty for the violation of the provisions of section 39 of the Tenement House Law (Laws 1909, c. 99; Consol. Laws, c. 61.). On the trial it was stipulated that, if a recovery was had, it should be limited to the sum of $50, without costs. Section 39 says:

"No tenement house, nor any part thereof, nor of the lot upon which it is situated, shall be used as a place of storage, keeping or handling of any combustible article except under such conditions as may be prescribed by the fire department, under authority of a written permit issued by said department. No tenement house, nor any part thereof, nor of the lot upon which it is situated, shall be used as a place of storage, keeping or handling of any article dangerous or detrimental to life or health, nor for the storage, keeping or handling of feed, hay, straw, excelsior, cotton, paper stock, feathers or rags."

The charge against the defendant, who is the proprietor of the premises 74–76 Rutgers Slip and 249 Cherry street, is that:

"The west store on the first story is used for the storage and handling of rags. There are 1,500 pounds of rags on premises."

No question was raised on the trial as to the character of the building being a tenement house, within the provisions of the Tenement House Law. The sole question presented is whether the material stored and handled on the premises came within the definition of the word "rags," used in section 39. The store where the material complained of was stored and handled was about 20 feet wide and 15 feet deep. It was rented by the defendant to a tenant.

[1] Several inspectors of the tenement house department testified that they visited the store on different occasions. These witnesses testified that they saw in the premises on these occasions from seven to a dozen large burlap bags about six or seven feet long, two to six feet wide, and about three to five feet in depth. These bags were tied with rope and weighed about 200 or 300 pounds each. From the mouths of the bags protruded small pieces of cloth of various colors, sizes, and shapes. One of these bags was thrown on the floor, and the contents were half spilled out. Several men were working sorting this material

from the bag on the floor. The process of sorting consisted in one of the men rubbing the pieces or fragments of cloth over a wire sieve. In this manner the waste material, such as dirt and loose threads, and the small pieces fell through the holes of the sieve to the floor. When this was done, the large pieces of cloth were thrown into separate receptacles, the cotton into one, and the wool into another. These fragments of cloth were of various fabrics, such as cotton and wool, and were of different colors. None of the fragments exceeded two inches square. These bags occupied about 20 per cent. of the floor space.

All of the witnesses agreed that the fragments of cloth which they saw were new material. The only purpose for which the store was used was the sorting of these pieces of cloth. These inspectors were positive that the fragments of cloth which they saw were too small to be used in the manufacture of any article of wear.

In his defense the defendant testified that he saw this sorting being conducted on the premises by the employés of his tenant, and that the pieces of cloth were separated and sorted for the purpose of manufacture into slippers and caps. I think the weight of evidence is with the plaintiff to the effect that these pieces of cloth were too small to be used for manufacturing purposes such as the defendant contended.

There can be no doubt, from the reading of the evidence on the trial, that the storing and keeping of the rags was in a mercantile sense in considerable quantities and with a view to commercial traffic. People v. Friedman, 132 App. Div. 61–63, 116 N. Y. Supp. 538.

[2] Moreover, I think this material came within the definition of rags, as intended by the section.

The Century Dictionary defines the word "rags" to be:

"A torn, worn, or formless fragment or shred of cloth; a comparatively worthless piece of any textile fabric, either wholly or partly detached from its connection by violence or abrasion; as, his coat was in rags; cotton and linen rags are used to make paper, and woolen rags to make shoddy."

The Standard Dictionary says a "rag" is:

"A fragment of cloth torn or partly torn from its original connection, especially a worn, frayed, or torn bit of a garment."

The pieces of cloth which the employés of the tenant were sorting were made of wool and cotton. A rag may be of wool as well as of cotton and linen. The defendant's counsel argued on the trial that the section intended only old pieces of cotton, linen, or woolen cloth, as distinguished from new clean pieces of goods. I cannot see how this distinction can be made.

In Train-Smith Co. v. United States (C. C.) 140 Fed. 113, a rag was defined to be:

"An old, torn piece, small or large, of any woven fabric, which has subserved one purpose, and comes into the market as secondhand material."

In that case the rags consisted of coarse pieces of jute bagging torn from cotton bales; the smallest piece being about one foot square, the largest being 2½ feet long by about 1½ feet wide. These pieces of jute bagging were suitable only for rags in stuffing and as paper stock.

The fact that these pieces of cloth were new does not take them out of the character of rags. It is not necessary that a fragment of cloth be old and dirty to make it a rag. Within the definition it may be a formless piece of fabric, whether old or new. These pieces could not be used for the purpose of manufacture into articles of wear because of their small size. They had some commercial value, but what is not entirely clear. The section also used the word "paper stock," so that the word "rags" must have some other meaning than material used for paper stock.

When the purpose of the section is considered, it seems to me that the material which was stored and handled on these premises must be considered as rags. The section was intended as a means of minimizing the dangers of fire in a tenement house.

I think the latter portion of the section, which prohibits the storing, keeping, or handling of rags, among other things, must be read in connection with the language immediately ahead, namely:

"No tenement house, nor any part thereof, nor of the lot upon which it is situated, shall be used as a place of storage, keeping or handling of any article dangerous or detrimental to life or health."

The prohibition against the storage, keeping, or handling of rags is in behalf of the public welfare, so as to avoid the dangers of fire and disease which are undoubtedly a menace to life and health. The contention of the defendant's counsel was that it is the intention of the section to prevent the keeping, storing, and handling of such rags only as may be a source of disease. The pieces of material in the case at bar were new, and so he argued were not liable to cause disease as old and dirty cotton and linen rags, which might be used in the manufacture of paper. I cannot see the force of this argument. It seems to me that the danger of fire in a tenement house involves graver possibilities than the spread of disease. A conflagration in a crowded tenement house would place in serious peril the lives of many occupants, and might not be as easily checked as a disease or contagion, which, in the beginning at least, would probably only attack a few persons.

I am not unmindful that the Tenement House Law should be strictly construed (People v. Rosenberg, 138 N. Y. 410, 415, 34 N. E. 285), but nevertheless I am of the opinion that the material stored, kept, and handled on these premises was rags, and that their keeping, storing, and handling came within the spirit and intent of section 39.

Judgment must therefore be rendered in favor of the plaintiff for the sum of $50, without costs.