## GOLDSMITH'S SONS *v.* UNITED STATES (No. 2405)[1]

1. MEANING OF WORDS.
    The meaning to be given to a descriptive word or words used in a tariff act is the meaning which the word or words had at the time of the enactment of that act.

2. EVIDENCE OF MEANING OF WORDS—RELEVANCY.
    What the importer may or may not use the imported material for at the time of importation has no relevancy to the issue of the meaning of the tariff designation at the time of the enactment of the tariff act.

3. CONSTRUCTION—KNOWLEDGE OF TRADE PRACTICES IMPUTED TO CONGRESS—"FOOTBALL * * * LEATHER."
    The provision of paragraph 1431, Tariff Act of 1922, taxing football leather is new. Prior to this act such leather could be imported and used economically for making footballs. Congress is presumed to have known this and to have intended, by the new legislation, to protect the American manufacturers of this kind of leather. Such leather is dutiable as football leather, under paragraph 1431, and not free as leather not specially provided for under paragraph 1606, notwithstanding that the particular importation is used by the particular importer chiefly for making basket balls.

United States Court of Customs Appeals, May 11, 1925

APPEAL from Board of United States General Appraisers, Abstract 46970

[Affirmed.]

*Comstock & Washburn* (*J. Stuart Tompkins* of counsel) for appellants.
*William W. Hoppin*, Assistant Attorney General (*John A. Kemp*, special attorney, of counsel), for the United States.

[Oral argument April 22, 1925, by Mr. Tompkins and Mr. Kemp]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:
These are consolidated cases arising out of protests 976858, 980467, and 980634. The material imported was classified by the collector in

[1] T. D 40932.

each case as football leather under paragraph 1431, Tariff Act of 1922, which is as follows:

Chamois skins, pianoforte, pianoforte-action, playerpiano-action leather, enameled upholstery leather, bag, strap, case, football, and glove leather, finished, in the white or in the crust, and seal, sheep, goat, and calf leather, dressed and finished, other than shoe leather, 20 per centum ad valorem.

In each case the importers claimed the same to be free of duty under paragraph 1606, which is as follows:

Leather: All leather not specially provided for; harness, saddles, and saddlery, in sets or parts, except metal parts, finished or unfinished, and not specially provided for; leather cut into shoe uppers, vamps, soles, or other forms suitable for conversion into manufactured articles; and leather shoe laces, finished or unfinished.

The testimony and exhibits show the goods imported to be pieces of tanned, undyed, pebbled cowhide leather. Each piece is one-half of a complete cowhide, has been split to a uniform thickness while being tanned, and contains about 18 square feet of leather. The goods were invoiced in protest 976858 as "Football backs," in 980634 as "Cowhide leather," and in 980467 as "Pebble grain leather" and "Pebble grain football backs."

The Board of General Appraisers, on appeal from the classification of the collectors, sustained the classification in each instance and rendered judgment accordingly. From that judgment the importers appeal to this court.

The claim of the importers is, in brief, that this leather is now used by them for the principal purpose of making basket balls, and that only such portions of the leather as can not be used for that purpose are used for making footballs; that the leather should therefore be classified according to its use, as basket ball leather and not as football leather; that, inasmuch as there is no specific provision for basketball leather in paragraph 1431, this leather should be free under paragraph 1606, as leather not specially provided for.

We have held that the meaning to be given to a descriptive word or words used in a tariff act, is the meaning which the word or words had at the time of the enactment of that act. *Smillie & Co.* v. *United States,* 12 Ct. Cust. Appls. 365, T. D. 40520, and cases therein cited. The inquiry here, therefore, must be as to the common or commercial meaning of the words "football leather," at the time the Tariff Act of 1922 was approved. Much of the testimony in the record is, in view of this conclusion, irrelevant. What the importers may or may not use the material in question for now has no relevancy to this issue, namely: Was the material imported commonly or commercially known as "football leather" on September 21, 1922?

We can not doubt, from the record, that it was so known. Oscar Goldsmith, secretary of, and a witness for, the importers, testified:

Q. Explain how.—A. We have not gone into basket balls in England and for years there was no tariff on this, and we just simply called it football leather. We did manufacture these hides at some time, and since the tariff has been placed on it, why it has been prohibitive, and we are only making this for basket ball, and buy our football leather from American manufacturers, with the exception of these little pieces.

Q. Prior to the enactment of this tariff act you brought this in as football leather?—A. It was just a matter of the term that was used by the manûfacturers.

Q. And regarded it that way?—A. We could just as well have called it pebbled cowhide.

Q. But you called it football leather?—A. But it could be used for basket balls.

    *       *       *       *       *       *       *

General Appraiser BROWN. Did you request it to be billed to you in a particular way?

The WITNESS. Did I ask the manufacturer? We just simply ordered it as football leather, in years gone by, because the football originated from England. It is a game that comes from England.

The record in the matter of protest 972377 was made a part of the record herein. In that hearing, one T. J. Hartman, a witness for the importers, testified. This witness, a manufacturer of sporting goods, and with some 15 or 16 years' experience as an importer of leather such as is involved in the case at bar, testified:

Q. You do make footballs out of it sometimes?—A. We do not make footballs straight. We can buy American leather.

Q. These are imported from England?—A. Yes.

Q. And are invoiced how, as 100 pairs of football leather?—A. Yes, sir; I have an order showing you just how it was ordered.

Q. Not specified as basket-ball leather or any other leather just football leather?—A. Just football leather.

Q. And that is the same kind of description, and the same that you have been importing from the same people for the last 15 or 16 years?—A. Yes, sir.

This is all the testimony appearing in the record material to the issue we have heretofore stated, and is all submitted by the importers themselves. The only reasonable deduction to be drawn therefrom is that at the time of the approval of the Tariff Act of 1922, the leather in question was known to the trade as football leather. The importers and their associates in like lines of trade ordered and bought it as football leather, and used it principally for the purpose of making footballs. Prior to the enactment of the Tariff Act of 1922, there was no specific duty upon football leather, as such, and hence such leather as this could be imported and used, economically, for the manufacture of footballs. It is a reasonable assumption that Congress, by inserting a provision for a specific duty upon "football leather," knew of this trade practice, and intended, by the inclusion of this

new language, to protect the American manufacturers of this kind of leather. Otherwise, why insert the language? If this be true, the customs duty provided was upon the material, and is not at all to be measured by the use to which the material may be put. An importer can not defeat the purpose of such an enactment by making a use of an imported material differing from its use prior to the enactment of such provision.

These being our conclusions, it does not become necessary to pass upon the various incidental questions urged by counsel, and the judgment of the court below is therefore *affirmed.*