UNITED STATES *v.* TAUSIG & PILCER, CHAS. REDDEN (No. 3369)[1]

[1] T. D. 44681.

United States Court of Customs and Patent Appeals, March 2, 1931

*Charles D. Lawrence,* Assistant Attorney General (*Lyman Ward* and *Ralph Folks,* special attorneys, of counsel), for the United States.

*Brown & Carter* (*Allen R. Brown* and *Fred. J. Carter* of counsel) for appellees.

[Oral argument December 11, 1930, by Mr. Folks and Mr. Carter]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

The appellees made eight entries of leather at the ports of New York and Newark, N. J. The appraiser, in entries Nos. 389663, 352674, 365967, 323977, 338206, and 345603, found the goods to be seal leather. Entry No. 70934 included goat leather, and entry No. 30216 included seal, pig and "elefant" leather. The goods in entries Nos. 389663, 352674, and 365967 were classified by the collector as seal leather, dressed and finished, other than shoe leather, under

paragraph 1431 of the Tariff Act of 1922. In entries 323977, 338206 and 345603 it was classified, as shown by the appraiser's report, as "seal leather in the crust, the chief use of which, in the opinion of this office, is for the making of bag leather," under the same paragraph. In entries Nos. 70934 and 30216 the merchandise was classified as bag leather, under said paragraph. It is conceded that all the seal leather involved was in the crust. The importers, certain of the entries having been consolidated, filed four protests, in each of which they alleged that the goods were free of duty under paragraph 1606 of said act, as leather not specially provided for. The said paragraphs are as follows:

PAR. 1431. Chamois skins, pianoforte, pianoforte-action, player-piano-action leather, enameled upholstery leather, bag, strap, case, football, and glove leather, finished, in the white or in the crust, and seal, sheep, goat, and calf leather, dressed and finished, other than shoe leather, 20 per centum ad valorem.

PAR. 1606. Leather: All leather not specially provided for; * * .*

In the hearing in the court below, the importer called three witnesses, two of whom, Norman Hertz and Ernest W. Worsdell, testified as to an alleged commercial designation of the imported leather, while the other witness was called simply for the purpose of identifying samples. By agreement, the record in *United States* v. *Kaufman*, 14 Ct. Cust. Appls. 264, T. D. 41881, was incorporated into the record of this case, and, in addition, the importer offered the record in protests 153037–G, etc., so far as the same should apply to the pigskin imported in the case at bar. This record was admitted over the objection of, and with an exception by, the Government.

The court below, after considering the matter, sustained the protests, and while it is not specifically stated in the opinion filed, it is inferable from the same, that the court did so upon the theory that proof of commercial designation had been introduced, sufficient to establish that the goods imported here were uniformly, definitely, and generally known, at the time of the enactment of the Tariff act of 1922, as other than bag, strap, or case leather. We quote the following excerpt from the opinion:

The witness Hertz, wholesale manufacturer of bag, strap, case, and upholstery leathers for 10 years, and the witness Worsdell, wholesale dealer in all kinds of fancy leathers for 30 years, were called to testify on behalf of the plaintiffs. It appears from their statements that leather used in making bags, straps, and cases, is limited to that of the bovine species, and that sealskin and pigskin leathers are excluded from such use.

It is conceded by both parties in the argument here that there is no evidence in the record, of any kind, relative to the goat leather imported here, and that as to this item the judgment of the court below must be reversed.

A preliminary question arises as to the admissibility of the record in protests 153037–G, etc., which was offered by the importer with

reference to the pig leather involved herein. It is strenuously insisted here, by the Government, that this record was not properly received in evidence; that the importer failed to make any showing that the goods were the same, or were adapted to the same uses. Arguing upon this alleged state of facts, the Government contends that the record was not pertinent, and relevant to the issues, and should not have been received, following this with the conclusion that without this record there was no proof offered by the appellees on the item of pigskin, and hence the court below was in error in overruling the classification of the collector as to that item.

The record as to the introduction of the record in protests 153037–G, etc., is as follows: The witness, Hertz, was testifying and the following question was asked and answer given:

Q. You recall testifying here once before on pigskin leather in your case?—A. Yes.

Q. Is this the same sort of pigskin leather as we had then?—A. The same.

\* \* \* \* \* \* \*

Mr. KLINGAMAN. That is all. At this point I would ask that as far as the item of pigskin is concerned, that the record in 153037–G may be incorporated; the witness just testified it was the same as to that.

Mr. OSBORN. As to that, if the court pleases, we had the question of use, the use which the leather had at the time of importation throughout the United States of that particular grade would be a fact to be proven in each case; for that reason I object to the incorporation because the same state of facts do not exist, the same date of exportation, and a different use had been made.

Justice SULLIVAN. The question is, if the use is the same, whether the use was the same in that case; was it?

Mr. KLINGAMAN. That was one feature of the case, what it was used for.

Mr. OSBORN. As I recall the case, it was pigskin leather, and the Government's contention was, to be made for bags and cases.

Mr. KLINGAMAN. In that case it did not have the stamping which large cases have.

Mr. OSBORN. I think inasmuch as my opponent admits use was the dominant feature——

Mr. KLINGAMAN. I said it was one of the features.

Mr. OSBORN. What is the other?

Justice SULLIVAN. Was that the issue?

Mr. KLINGAMAN. That was the issue in that case.

Justice SULLIVAN. Was all this testimony of the witnesses as to use in that case?

Mr. KLINGAMAN. One, on the uses, and two, with the terms, "bag leather, strap leather, and case leather."

Justice SULLIVAN. I think we will admit it.

Mr. OSBORN. I respectfully except.

The Government's third assignment of error, the only one on this point, is as follows:

3. In admitting and incorporating record in 153037–G, Abstract 3194, over the objections made and exceptions taken by Government counsel, without importer first showing that the use of the merchandise involved herein at the time of importation was the same as that involved in the record in 153037–G.

Some contention has been made here as to the invalidity of Rule XXIV of the United States Customs Court under which this record was admitted in evidence. We had a somewhat similar question before us in *United States* v. *Minkus*, 16 Ct. Cust. Appls. 263, T. D. 42869, and there expressly refrained from passing upon the validity of this rule, but held a record received in evidence thereunder to have been improperly admitted. The question of the validity of the rule was not there, nor is it here, properly raised. When the validity of this rule is properly raised in this court, by a sufficient assignment of error so that it may be properly briefed and argued by counsel, that matter will be determined. The question, however, is not in this case on this record.

We are, however, of opinion that the record was improperly received in evidence upon the grounds urged by the Government in the court below. There was no showing made by the importer in offering the record that the goods imported in protests 153037–G, etc., were "substantially the same character of goods," or involved "an issue arising upon the same state of facts," as those in the case at bar, to quote the language of said Rule XXIV. It will be observed from the hereinbefore-quoted portions of the record that the importer fell far short of such a showing. Conceding, for the sake of the argument, but not holding, that said Rule XXIV is valid, it surely must, as we said in *United States* v. *Minkus, supra,* be closely adhered to when other records are to be incorporated into a case, over the objection of opposing counsel. There was nothing here to lead the court below to conclude that the goods were substantially of the same character, or that the issues arose upon the same state of facts except the statement of importer's counsel that some of the issues were the same. The hearing in protests 153037–G, etc., was had by the lower court almost two years before the case at bar was heard. The witness, Hertz, did not state that the goods were substantially the same in protests 153037–G, etc., and in the case at bar. What his case was, in which he had formerly testified, he entirely failed to state. Neither was there a sample of the goods in the former case before the court, so far as the record shows. The court below seems to have proceeded upon the theory, and so states in its opinion, that the record in said protests 153037–G, etc., was admitted in evidence by consent of counsel. The record shows the opposite to be true. In our opinion, the record in protests 153037–G, etc., was erroneously received in evidence.

We have heretofore held, uniformly, that the classification of leather as "bag, strap, case, football, and glove leather," depended upon the use to be made of such leather. *Keshishian & Co.* v. *United States,* 11 Ct. Cust. Appls. 177, T. D. 38961; *Esposito* v. *United States,* 12 Ct. Cust. Appls. 334, T. D. 40485; *United States* v. *Redden,* 13 Ct.

Cust. Appls. 224, T. D. 41177; *Goldsmith's Sons* v. *United States*, 13 Ct. Cust. Appls. 69, T. D. 40932; *United States* v. *Hudson F. & S. Co.*, 14 Ct. Cust. Appls. 188, T. D. 41700; *United States* v. *Kaufman & Co.*, 14 Ct. Cust. Appls. 264, T. D. 41881; *United States* v. *Downing*, 16 Ct. Cust. Appls. 556, T. D. 43294. Some explanations of the scope and extent of this rule have been required from time to time, as in *Goldsmith's Sons* v. *United States* and *United States* v. *Hudson F. & S. Co.*, *supra*. But no departure has been made from the general rule.

We have not, however, in any of the cases cited, or in any other case, been called upon to determine whether leather which, by use, might come within said paragraph 1431, might be taken therefrom by proof of commercial designation differing from the leathers therein named, at the time of the enactment of the Tariff Act of 1922. We have, however, observed in *Goldsmith's Sons* v. *United States, supra*, that the test to be applied is by the designation which the article had, either commonly or commercially, at the time of the enactment of the statute. In *Keshishian & Co.* v. *United States, supra*, we affirmed the Board of General Appraisers in finding that the proof offered below did not establish a commercial designation different from the common meaning. In *United States* v. *Redden, supra*, we held that commercial designation had not been established.

The decisions of this court on the question of commercial designation have always been in harmony with *Cadwalader* v. *Zeh*, 151 U. S. 171, and *Maddock* v. *Magone*, 152 U. S. 368. The rule was stated in the former case as follows:

It has long been a settled rule of interpretation of the statutes imposing duties on imports that if words used therein to designate particular kinds or classes of goods have a well-known signification in our trade and commerce, different from their ordinary meaning among the people, the commercial meaning is to prevail, unless Congress has clearly manifested a contrary intention; and that it is only when no commercial meaning is called for or proved that the common meaning of the words is to be adopted.

No reason appears why this rule should not apply in the case at bar. There is nothing in the text of paragraph 1431, nor in the act as a whole, nor in its legislative history, so far as the same has come to our knowledge, to indicate that any departure from the ordinary rule of commercial meaning was in the legislative mind in drafting or passing this paragraph. In our opinion, the words of paragraph 1431, 'bag, strap, case, football, and glove leather," are subject to proof of commercial designation. Descriptive terms have been uniformly held to be subject to such proof. *Two Hundred Chests of Tea*, 9 Wheat. 428; *American Express Co.* v. *United States*, 10 Ct. Cust. Appls. 275, T. D. 38680; *LaManna, Azema & Farnan* v. *United States*, 14 Ct. Cust. Appls. 289, T. D. 41908.

A brief résumé of the testimony of the witnesses, Hertz and Worsdell, upon the question of commercial designation, is therefore necessary. Hertz testified that he was vice president of the Max Hertz Leather Co., and that he had been in the leather business 10 years, during which he had sold the seal leathers imported and mentioned in protest 269360–G "all over the country"; that he had traveled for the purpose of making sales and frequently met buyers in their places of business. The following questions were then asked and answered, over the Government's objections as to the qualification of the witness:

Q. Was the term "bag leather" used by buyers and sellers at that time?—A. Yes.

Q. What was the meaning of the term as it was used at that time?

        *         *        *        *        *        *        *

A. That was leather made from the bovine species, such as cow and steer, and used in the manufacture of dress-suit cases and bags.

        *         *        *        *        *        *        *

Q. When you say in the use of the manufacture of bags, what kind of bags?—A. Hand bags, big traveling bags, suitcases.

Q. The heavy bags?—A. The heavy bags, grips.

Q. Leather used in making small articles like pocketbooks, would that be it?—A. That would be pocketbook leather.

Q. That is not bag leather as that term is used?—A. No.

Q. What was the meaning of the term "case leather" as used at that time?—A. It was leather made from the bovine species, and smooth in appearance, used in dress-suit cases, sometimes embossed, but generally plain.

Q. And strap leather; what was the meaning of that term as used at that time?—A. For straps around the cases and other uses.

Q. Was that also of the bovine species?—A. Always.

The witness, Worsdell, testified, in substance, as follows: That he had been a wholesale dealer in leather for 30 years, and during that time had traveled "all over the country" selling goods; that he had handled merchandise like that mentioned in protests 210351–G and 269360–G, and had bought and sold the same at wholesale. Then came the following questions and answers:

Q. Were you dealing in bag, strap, and case leather in 1922?—A. Yes, sir.

Q. Were those terms used by buyers and sellers in the wholesale trade at that time?—A. Yes, sir.

Q. In September, 1922, and just before that time?—A. Yes, sir.

Q. Did buyers from different sections of the country use the term?—A. Yes, sir.

Q. What did the term "bag leather" mean, when so used?—A. Leather made from the cattle hides of the bovine species.

Q. Any further qualifications?—A. That is about all.

Q. Did it have to be suitable for any particular use?—A. Leather made from those animals?

Q. Yes.—A. Bag, case, and strap leather.

Q. Any kind of bags?—A. Mostly the heavy traveling bags.

Q. How about case leather; what did that mean?—A. For dress-suit cases.

Q. Was that confined to bovine leather also?—A. Yes, sir.

Q. How about strap leather?—A. Strap leather meant luggage straps, bag straps.

Q. Any particular origin?—A. Bovine origin.

Q. Small leather bags, ladies' pocketbooks, are they the kind of bags you are talking about?—A. No, sir.

Q. Only as to heavy traveling bags?—A. Yes, sir.

\*       \*       \*       \*       \*       \*       \*

Q. Mr. Worsdell, on your direct examination you stated in 1922 bag, case, and strap leather was always leather of the bovine species?—A. It was commercially known as leather of the bovine species.

\*       \*       \*       \*       \*       \*       \*

Q. And when you refer to the bag, strap, and case business, you are referring to your business?—A. No.

Q. Or are you considering the entire trade of the country?—A. The entire trade of the country.

\*       \*       \*       \*       \*       \*       \*

Q. And where are your buyers from?—A. All over the country.

Q. But the buyers to whom you sell might buy a little or a big quantity of your merchandise?—A. They might buy little or big.

Q. How many competing concerns have you selling the same goods?—A. In what locality?

Q. All over the United States?—A. That is a very difficult question to answer.

Q. Would you say there are 500?—A. Yes.

There is nothing in the incorporated *Kaufman & Co.* record which throws any light upon the question of commercial designation. The question of whether commercial designation of the leather in question other than its common meaning, has been established, must be determined from the testimony of Hertz and Worsdell just quoted.

While this testimony might have been more precise and definite, we conclude that, in the absence of any showing to the contrary, it establishes fairly well that at and just prior to the enactment of the Tariff Act of 1922, the leather which was commercially designated as bag, strap, and case, was leather of the bovine species, and was limited to such leather as was used for heavy bag and suit cases, and straps therefor. Seal leather, pig and "elefant" leather, were not included within such designation.

The items of seal leather, in the crust, described in entries 389663, 352674, and 365967 and classified therein as seal leather, dressed and finished, were, admittedly, improperly classified as such. Commercial designation having been established, the seal leather in the crust, included within entries 323977, 338206, and 345603, and classified as bag leather, was improperly classified as such. The items of pig and "elefant" leather in said entry 30216, also classified as bag leather, under said finding of commercial designation, were also improperly classified as such. No issue is made here, by the Government, that any of the leather in question might be one of the other leathers named in said paragraph 1431, and that it therefore might be properly classifiable under said paragraph. The issue is as to

commercial designation and it seems to be conceded that if the same be established, the importer's protest should be sustained. Taking the issues, therefore, as the parties have made them, we conclude that as to the items of seal, pigskin, and "elefant" leather involved herein, the judgment of the lower court was without error.

It is argued that the court below did not expressly make a finding that commercial designation had been established. If its judgment was right, it is comparatively unimportant, in this case, what the language of its opinion was. The appeal is from the judgment, not from the opinion. *Roberts* v. *United States*, 17 C. C. P. A. (Customs) 215, T. D. 43653; *United States* v. *Penn C. C. of America*, 15 Ct. Cust. Appls. 206, T. D. 42237; *Roessler & Hasslacher C. C.* v. *United States*, 13 Ct. Cust. Appls. 451, T. D. 41347.

The judgment of the court below is *affirmed* as to the items of seal-skin, pigskin, and "elefant" leather, and is *reversed* as to the item of goatskin leather, all as more specifically hereinbefore set forth, and the cause is *remanded* for further proceedings in conformity herewith.

DISSENTING OPINION

LENROOT, Judge: I feel compelled to dissent from the conclusion reached by the majority of the court because, in my judgment, the testimony does not establish commercial designation of the term "bag leather."

I do not think that a reasonable interpretation of the decision of the lower court permits the conclusion that it found commercial designation was proved, but I agree with the statement in the majority opinion that if commercial designation was established by the testimony it is immaterial whether or not the lower court so found.

I am of the opinion that the testimony relied upon by the majority as proof of commercial designation shows nothing more than the trade's understanding of the common meaning of the term "bag leather." I take it for granted that 90 per centum or more of the leather used for making bags is leather of the bovine species, and that when the trade speaks of bag leather, a certain kind of leather made from hides of the bovine species is generally understood; but it does not follow that skins of other animals are not also made into leather which is used for making bags and known to the trade as bag leather.

In my opinion there is nothing in the testimony quoted or other testimony in the case that establishes that the term "bag leather" in the commerce and trade of the United States had a restricted meaning different from the common meaning, nor, as I construe the record, is there any testimony that there was a definite, uniform, and general trade understanding and designation of the term "bag leather" which excluded the merchandise here in question. It has been the rule that such proof is necessary to establish commercial designation.

*Sunde & D'Evers Co. et al.* v. *United States,* 17 C. C. P. A. (Customs) 24, T. D. 43321; *Draeger Shipping Co.* v. *United States,* 15 Ct. Cust. Appls. 190, T. D. 42234.

It is significant that no witness was asked if the leather in question was known in the trade and commerce of the country as bag leather. If such question had been asked and the answer had been "no," it might be held that the testimony showed that the leather here in question was excluded from the term "bag leather." As stated in the majority opinion, there were but two witnesses who testified upon the question of commercial designation.

One of them, the witness Hertz, upon cross-examination was asked the following questions and gave the answers quoted:

Q. Do I understand from your direct examination that bags, cases, and straps at and prior to 1922 were made of nothing but the leather of the bovine species?—A. That was the general accepted idea of it, yes.

Q. You know that cases were made out of other materials?—A. Some.

Q. So that in 1922 bags and cases were made of various kinds of leather, were they not?—A. Some.

This testimony clearly indicates, to my mind, that sealskin leather was not excluded from the term "bag leather," but only that bag leather was almost wholly derived from hides of the bovine species. He states that it was the generally accepted idea that bags, cases, and straps were made of nothing but the leather of the bovine species, and yet, immediately following, he states that there were some bags and cases made of various kinds of leather. I think this testimony should be read in connection with his other testimony which, it is held, establishes commercial designation, and when so read the testimony as a whole falls far short of establishing commercial designation.

As to the other witness, Worsdell, whose testimony is relied upon as establishing commercial designation, he testified as follows:

Q. What did the term "bag leather" mean, when so used?—A. Leather made from the cattle hides of the bovine species.

Q. Any further qualifications?—A. *That is about all.* [Italics mine.]

Surely this testimony can not be said to exclude the leather here in question from the term "bag leather." His testimony is entirely consistent with the fact that bags and cases are almost wholly made out of leather of the bovine species; but the language "That is about all" not only does not exclude the leather here in question but, on the contrary, it inferentially includes some leather not derived from the bovine species, otherwise why should the witness say "That is about all" if all leathers other than those of the bovine species were excluded?

This court has heretofore been very strict as to proof of commercial designation. In the case of *Passaic Worsted Co. et al.* v. *United*

*States*, 17 C. C. P. A. (Customs) 459, T. D. 43916, Presiding Judge Graham said:

* * * The rule of commercial designation is a wise one, but the rule is narrow and must be closely adhered to.

Because I believe that the majority opinion, in effect, relaxes the rule of commercial designation heretofore followed by this court to such an extent that hereafter proof of commercial designation will be easy, where heretofore it has properly been difficult, I feel impelled to file this dissenting opinion.

In my opinion the judgment of the court below should be *reversed*.