UNITED STATES *v.* S. SCHAPIRO & SONS (No. 4020) [1]

S. SCHAPIRO & SONS ET AL. *v.* UNITED STATES (No. 4024)

---
[1] T. D. 48771.

United States Court of Customs and Patent Appeals, January 4, 1937

*Walden & Webster (Jacob L. Klingaman* of counsel) for importers.
*Joseph R. Jackson,* Assistant Attorney General (*John F. Kavanagh,* special attorney, of counsel), for the United States.

[Oral argument December 10, 1936, by Mr. Klingaman and Mr. Kavanagh]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

These are cross appeals from a judgment of the United States Customs Court sustaining in part certain protests, and overruling certain other protests, all of which protests were filed either by Schapiro & Sons or the United Rag & Paper Exchange, hereinafter called the importers. The protests were directed against the classification for duty, by the collector at the port of Baltimore, of certain rags imported from Japan, assessed with duty at the rate of 3 cents per pound under paragraph 922 of the Tariff Act of 1930. The protests alternatively claimed that the rags were free of duty under paragraph 1750 of said act.

A number of protests were consolidated for purposes of trial. Upon the trial the importers abandoned certain of the protests, and the judgment of the United States Customs Court dismissed the same. No question is raised here as to such dismissal.

.It appears that the rags were imported in bales of approximately 500 pounds each, and that the rags contained therein varied in size and quality.

Pursuant to the provisions of section 508 of the said tariff act, segregation was made under customs supervision of the rags in the statutory number of packages required to be examined.

The issue raised by the protests was whether the rags were classifiable under the provisions of said paragraph 922 or were free of duty, as being chiefly used for paper stock, under the provisions of said paragraph 1750.

Said paragraphs read as follows:

PAR. 922. Rags, including wiping rags, wholly or in chief value of cotton, except rags chiefly used in paper-making, 3 cents per pound.

PAR. 1750. Rag pulp; paper stock, crude, of every description, including all grasses, fibers, rags, waste (including jute, hemp, and flax waste), shavings, clippings, old paper, rope ends, waste rope, and waste bagging, and all other waste not specially provided for, including old gunny cloth, and old gunny bags, used chiefly for paper making, and no longer suitable for bags.

Upon the trial the importers abandoned any claim that all of the rags imported were free of duty, but limited their contention to only a percentage thereof. As to the merchandise covered by certain of the protests the collector assessed only a certain percentage of the rags with duty under paragraph 922, and the balance of the rags were held to be free of duty. As to certain other protests, the collector assessed all the rags covered thereby with duty under paragraph 922.

Upon the trial the parties entered into a stipulation, which appears in the record, by which it was agreed that a certain tabulation annexed thereto might be received in evidence for the purpose of showing, among other things, the weights of the rags under 144 square inches in area, and also the weights of the rags further claimed by the importers to be free of duty as paper stock. Paragraph 6 of the stipulation reads as follows:

6. That in the case of all protests, other than 651176G and 651177G, the rags were segregated into three piles. That the figures in the column headed "Rags" show the weight in pounds of rags less than 144 square inches in area, and that the figures in the column marked "Disputed" show the weight in pounds of rags approximately 144 square inches in area or larger.

While the counsel for the Government now make some contention that this stipulation is entitled to no weight, unquestionably the Government is bound by it so far as it purports to stipulate facts. *H. A. Whitacre, Inc.* v. *United States*, 22 C. C. P. A. (Customs) 623, T. D. 47615.

The Customs Court held that the evidence established that the rags having an area of less than 144 square inches were paper stock and were chiefly used for paper making at the time of importation, and, as to all the rags involved having an area of 144 square inches or more, the court held that the evidence was insufficient to establish that they were used chiefly for paper making. Upon these points the court said:

We hardly think it necessary to attempt any detailed analysis of the voluminous testimony taken, beyond stating as our findings of fact herein that the testimony on the whole is too conflicting and contradictory to support plaintiff's claim that

all the rags in the importations less than two square feet in area are used chiefly for paper making, or that the other portions of the rags otherwise of suitable size for wiping purposes were rendered unsuitable for that purpose by reason of being too tender, ragged, or holey, or as having heavy seams, or as lacking in the necessary degree of absorbency.

However, as to the rags in the importations less than one square foot in area, we think the testimony and the record undoubtedly show that rags of this size are not considered as wiping rags, and that the chief use of this class of rags in this country is as paper stock.  *  *  *

Judgment was entered by the Customs Court in accordance with its decision, which in effect held that all of the imported rags less than 144 square inches in area were free of duty as paper stock, and all of the other rags were dutiable as assessed by the collectors.

The Government has appealed from so much of the judgment as affects the rags less than 144 square inches in area, and the importers have appealed from so much of the judgment as affects the imported rags having an area of 144 to 288 square inches.

Much testimony and many exhibits were introduced in evidence, the importers producing 12 and the Government 16 witnesses. The printed record consists of nearly 400 pages.

The principal part of the briefs of the opposing parties is devoted to analyzing the testimony in the case, each party claiming that the overwhelming weight of the evidence is in its favor. The Government contends that all of the rags here involved are wiping rags, and *eo nomine* dutiable under paragraph 922; that it is admitted that the rags and others similar thereto, imported from Japan, were bought and sold as wiping rags, and that it is established that they were for the most part, at least, washed and free from buttons, metal or other similar matter. The Government claims that, whatever may have been their original character, by the processes through which they had gone they had become a new article of manufacture, to wit, wiping rags. Apparently, from the Government's brief, some effort is made to establish commercial designation of the involved rags as wiping rags, but we find no sufficient proof in the record to establish such a claim.

The importers contend that, in determining the classification of the rags, not only must the importations from Japan be considered, but also the domestic production of rags of similar character. In this the importers are correct, and the trial court so held.

The question of the proper classification of rags imported from Japan has recently been before us in the following cases: *National Sanitary Rag Co.* v. *United States*, 23 C. C. P. A. (Customs) 200, T. D. 48051; *United States* v. *Belgam Corp. et al.*, 22 C. C. P. A. (Customs) 402, T. D. 47402; and *Hawley & Letzerich et al.* v. *United States*, 19 C. C. P. A. (Customs) 47, T. D. 44893. In the last two cited cases the rags were processed as were the rags here, but neverthe-

less we held, in the case of *Hawley & Letzerich et al.* v. *United States, supra,* that the rags there involved, upon the evidence in the record, should have been classified as paper stock, crude, and we reversed the trial court. In the case of *United States* v. *Belgam Corp. et al., supra,* we affirmed the judgment of the trial court holding that the involved rags, upon the record in that case, were classifiable as "paper stock, crude." It is true that both of these cases arose under the Tariff Act of 1922, which did not contain any provision similar to paragraph 922 of the Tariff Act of 1930, but the principle involved there is identical with that here upon the question of whether processed rags such as here involved may be included in the term "paper stock, crude."

We will not undertake to analyze in this opinion the voluminous evidence in the record. We have carefully examined it, and content ourselves with the statement that the findings of the trial court, both as to rags less than 144 square inches in area and rags 144 square inches up to 288 square inches in area, are not clearly contrary to the weight of the evidence.

The Government contends that, inasmuch as "rags" and "wiping rags" are *eo nomine* provided for in paragraph 922, the exception in the paragraph—"except rags chiefly used in paper-making"—does not modify the term "wiping rags" but only the term "rags", and that therefore the exception does not apply to wiping rags. However this may be, the term "wiping rags" is a descriptive term, and the meaning to be given to it is the meaning which it had at the time of the enactment of the Tariff Act of 1930. *Goldsmith's Sons* v. *United States,* 13 Ct. Cust. Appls. 69, T. D. 40932; *Wilbur-Ellis Co. et al.* v. *United States,* 18 C. C. P. A. (Customs) 472, T. D. 44762. If rags similar to those here involved were not chiefly used as wiping rags at the time of the enactment of the said tariff act, they were not in a tariff sense "wiping rags."

. In the case before us it is established that no change had occurred in the use of rags such as here involved between the time of the enactment of the Tariff Act of 1930 and the dates of the importations of the rags here involved.

Therefore, under the findings of the trial court, the imported rags under 144 square inches in area never were wiping rags, and therefore could not come under that designation in paragraph 922.

The Government next contends that the involved merchandise is not readily capable of segregation and that therefore segregation was improper, and that the rags should have been assessed with duty as an entirety.

It appears from the record that, prior to January 13, 1933, it had been the practice to segregate rags imported from Japan, such as are here involved; there is nothing in the record to indicate that the rags were not capable of segregation, but on the contrary it is established

that they were so capable. The only question that has arisen has been upon the point of whether certain rags belonged in one dutiable class or another, and this is purely a question of fact.

It appears that on January 13, 1933, a decision of the Bureau of Customs was published as a part of T. D. 46106, 63 Treas. Dec. 70, which was designed to change the practice above referred to, and from which we quote:

(4) *Cotton rags—Japanese wipers.*—Certain cotton rags of a type known as Japanese wipers contain no mingled quantities of paper stock segregable under section 508 of the tariff act of 1930. Change of practice effective 30 days from the date of the publication of this abstract in the weekly Treasury Decisions. Bureau of Customs circular letter No. 942, dated January 11, 1933. (110428.)

The Government contends that this is a valid regulation and that segregation of the involved rags was therefore improper. The trial court held that the regulation was "without warrant of law and of no binding force insofar as it in effect attempts to classify merchandise before importation regardless of the actual facts with reference thereto." We are in accord with this holding of the trial court. The said regulation does not purport to be based upon incapability of segregation, but attempts to determine, in advance of importation, that segregation is not necessary.

In the case of *United States* v. *Myers & Co.*, 11 Ct. Cust. Appls. 409, T. D. 39322, this court said:

\* \* \* we think that the question herein submitted finds its answer in the established rule that where an importation consists of two distinct and segregable tariff entities, which, however are attached to one another or commingled together, they should nevertheless be separately treated in the assessment, each accordingly bearing the rate of duty applicable to it, or admitted free of duty if entitled thereto. In the present case, therefore, the veal of the carcasses should have been assessed with duty as such at the rate of 2 cents per pound, while the skins should have been admitted free of duty.

See also *United States* v. *M. J. Brandenstein & Co.*, 17 C. C. P. A. (Customs) 480, T. D. 43941.

It would not seem to require any argument to establish that the rights of an importer under the law may not be abridged by a decision of the Bureau of Customs in the form of a general regulation.

The Government has assigned ten alleged errors of the trial court in ruling adversely to the United States on questions regarding the admission and exclusion of testimony. We have examined the record with respect to each of these assignments of error and, without lengthening this opinion with a discussion of them, our conclusion is that we find no reversible error of the trial court in either admitting or excluding the testimony referred to in the Government's assignments of error.

For the reasons stated herein, the judgment of the Customs Court is *affirmed*.