BEFORE THE SECOND DIVISION, MARCH 15, 1965

**No. 69134.**—S. De Freest & Co. *v.* United States, protests 62/10632 and 62/11569 (Honolulu).

RAO, Judge: Certain imported printing paper was assessed with duty at the rate of 0.17 cent per pound and 4 per centum ad valorem, pursuant to the provision in paragraph 1401 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, for uncoated printing paper, not specially provided for.

It is the sole claim of plaintiff herein that the subject paper is entitled to free entry as standard newsprint paper, as provided in paragraph 1772 of said Tariff Act of 1930.

In this, as in all actions initiated by way of protest against the decision of the collector as to the rate and amount of duties chargeable, the determination of the collector is clothed with a presumption of correctness, and it is also presumed that he has found the existence of all facts necessary to sustain his classification. *E. I. du Pont de Nemours & Co.* v. *United States*, 27 CCPA 146,

C.A.D. 75. The burden rests with the party challenging the collector's classification to establish not only the incorrectness of the action taken by the collector, but also the propriety of the claim which is relied upon. *United States* v. *Victoria Gin Co., Inc., W. H. Morton*, 48 CCPA 33, C.A.D. 759; *United States* v. *Gardel Industries*, 33 CCPA 118, C.A.D. 325.

Since the collector, in his answer to the instant protests, merely observed that the involved merchandise was classified as uncoated printing paper, not specially provided for, it may not be assumed that he denied free entry as standard newsprint paper for any particular reason. And notwithstanding the fact that the chemist's report, plaintiff's exhibit 2 in this case, indicates that the subject paper possesses all of the characteristics of standard newsprint paper, it was, nevertheless, incumbent upon plaintiff to establish affirmatively that the involved paper was newsprint paper within the purview of the statutory provision therefor.

It has long been well understood that the provision for standard newsprint paper is an *eo nomine* designation predicated upon use and that the meaning to be accorded this term is the meaning which it possessed at the time that the Tariff Act of 1930 was enacted. The principles pertaining to the subject of standard newsprint paper have been developed over the course of the years since the provision first appeared in the Tariff Act of 1922 (paragraph 1672). They are expressed with clarity in the case of *United States* v. *C. J. Tower & Sons*, 26 CCPA 1, T.D. 49534, as follows:

Before discussing the *Whelan* case, *supra* [22 CCPA 426, T.D. 47424], and other cases involved, we think it important to state the main question for determination here. It is: Was appellee required to establish that paper such as is here involved, or paper of the class to which the involved paper belonged, was chiefly used for printing newspapers on or prior to June 17, 1930? At the outset we answer that question in the affirmative. *Goldsmith's Sons* v. *United States*, 13 Ct. Cust. Appls. 69, T.D. 40932; *Wilbur-Ellis Co. et al.* v. *United States*, 18 C.C.P.A. (Customs), 472, T.D. 44762. The query then occurs: Has appellee met that requirement? The answer to this query depends upon a determination of whether or not paper in every respect similar to that which is conceded to be "Standard newsprint paper" except as to width (being 15 inches wide only), is such paper as belongs to the class of paper which was chiefly used for printing newspapers on and prior to June 17, 1930. While it is not improper to consider the use of paper which constituted the instant importation for the purpose of determining its character, it is well settled that such use is not controlling of its classification. *United States* v. *Swift & Co.*, 14 Ct. Cust. Appls. 222, T.D. 41706. The chief use of all imported paper and paper produced in this country, of the particular type and width as that at bar, on the date of importation, is also not controlling. *United States* v. *F. W. Myers & Co., Inc.*, 24 C.C.P.A. (Customs) 464, T.D. 48913.

It is equally well established that the mere fact that paper like that involved (15 inches wide) was not chiefly used for printing newspapers on or prior to the passage of the tariff act is not necessarily controlling if it is held that it belonged to a class of paper which was chiefly used for printing newspapers on and prior to the date of the passage of the act. It seems to us, therefore, under the instant record, that the ultimate question to be determined is whether or not the particular paper here involved should be held to belong to a class or standard of newsprint paper which was admittedly chiefly used for printing newspapers on and prior to June 17, 1930.

"Standard newsprint paper" is a designation by use. In determining the meaning of an *eo nomine* designation, which meaning is determined by its use, we must determine that meaning in accordance with its proven chief use on and prior to the date when the language which is being interpreted was used by Congress. *Goldsmith's Sons* v. *United States, supra; Wilbur-Ellis Co. et al.* v. *United States, supra; United States* v. *F. W. Myers & Co., Inc., supra.*

The *Tower* case was followed by this court in its consideration of the classification of uncoated printing paper claimed to be standard newsprint paper in the cases of *Malmar Paper Co. et al.* v. *United States*, 27 Cust. Ct. 16, C.D. 1341;

*Democrat-Herald Publishing Co. and Geo. S. Bush & Co., Inc.* v. *United States,* 29 Cust. Ct. 431, Abstract 57000; *The Tribune Publishing Company* v. *United States,* 35 Cust. Ct. 104, C.D. 1729; *Geo. S. Bush & Co., Inc.* v. *United States,* 37 Cust. Ct. 45, C.D. 1797.

In the last-mentioned case, we stated:

It is by now well-settled law that the classification of printing paper as standard newsprint paper is dependent upon its being paper of the class or kind which was chiefly used for the printing of newspapers at and prior to the time the present tariff act became a law. Susceptibility for use in printing newspapers is not the test; nor is the fact that the paper at bar was actually used for printing newspapers determinative of its classification. *Crown Willamette Paper Co.* v. *United States,* 16 Ct. Cust Appls. 431, T.D. 43187; *United States* v. *James P. Heffernan Paper Co.,* 17 C.C.P.A. (Customs) 61, T.D. 43358; *United States* v. *F. W. Myers & Co. Inc.,* 24 C.C.P.A. (Customs) 464, T.D. 48913; *United States* v. *C. J. Tower & Sons,* 26 C.C.P.A. (Customs) 1, T.D. 49534; *Malmar Paper Co. et al.* v. *United States,* 27 Cust. Ct. 16, C.D. 1341; *Democrat-Herald Publishing Co. and Geo. S. Bush & Co. Inc.* v. *United States,* 29 Cust. Ct. 431, Abstract 57000. Standards prescribed by the Secretary of the Treasury may properly be invoked by the collector as a guide in classifying importations of printing paper, but may not be made to serve as a bar to the free entry of any such paper falling within the types chiefly used for the printing of newspapers at or prior to June 17, 1930. *United States* v. *James P. Heffernan Paper Co., supra.* The question of what classes of paper were so used at that time, and whether the particular paper involved in any controversy is of that class, are issues of fact which must be established by competent evidence. *The Tribune Publishing Company* v. *United States,* 35 Cust. Ct. 104, C.D. 1729.

In the recent case of *United States* v. *The Baltimore & Ohio R.R. Co. a/c United China & Glass Company,* 47 CCPA 1, C.A.D. 719, our appellate tribunal appears to have introduced a modification of the principles controlling the doctrine of use when applied to designations suggestive of use such as is here involved. Although the *Tower* case, *supra,* is therein cited as authority for the proposition that the meaning of an *eo nomine* use designation, like that of any other *eo nomine* designation, must be determined in accordance with the meaning which the term possessed as of the date on which it became a part of the tariff act, apparently the court did not approve *in toto* that portion of the *Tower* decision which held that chief use must be established as of the date of the enactment of the Tariff Act of 1930. In construing the term "tableware," a provision found to be predicated upon use, the court, in *The Baltimore & Ohio R.R. Co.* case, *supra,* stated:

\* \* \* where, as here, classification is to be determined on the basis of chief use that determination should be made at the time of importation, whether or not the tariff provision in question explicitly requires classification by chief use.

What effect the quoted conclusion may have upon the classification of paper claimed to be standard newsprint paper is one to which we will need to address ourselves when the occasion arises, but we do not consider the instant case as one requiring that determination, for we find the record before us insufficient to establish chief use at any time or under any circumstances.

There is a suggestion in the record that the reason that the collector rejected the claim for free entry of the paper in issue was the fact that the color was not the shade of green used to print newspapers.

The only evidence in the case consists of the testimony of one Wayne L. Damon, secretary and treasurer of the Advertiser Publishing Co., Ltd., the ultimate consignee of the instant merchandise publisher of the Honolulu Advertiser. This witness testified that his duties include, in particular, the purchasing of newsprint and that he has been buying newsprint since 1936. He stated that his company has been importing a green-colored newsprint since that time

and has always used it in the publication of its newspaper. A sample of paper representative of the newsprint involved in the instant case, which the witness stated was representative of all of his importations of green newsprint, was received in evidence as plaintiff's collective exhibit 1. He further stated that newsprint is his company's biggest and most important purchase and that he tries to keep advised of its specifications. He admitted, however, that all of his purchases since 1936 were from one mill only, and although he testified that he had never seen or heard of paper like exhibit collective 1 in roll form being used for any purpose other than for the printing of newspapers, he did not state, nor was he asked to, how familiar he was with the newsprint utilized by other newspaper publishers throughout the country.

While it is true that chief use may be established by the testimony of one witness (*Klipstein* v. *United States*, 1 Ct. Cust. Appls. 122, T.D. 31120), it must appear that such witness possesses the necessary qualifications to testify as to how merchandise of the class or kind in issue is chiefly used.

As is quoted in *L. Tobert Co., Inc., et al.* v. *United States*, 41 CCPA 161, C.A.D. 544, from *Same* v. *Same*, Abstract 56581—

\* \* \* The fact of chief use is difficult to prove. It ordinarily entails rather exacting evidence of use throughout the United States and cannot depend upon evidence of use locally. \* \* \*

Whereas a witness who is engaged in the sale of imported merchandise on a nationwide basis would naturally be expected to know the ultimate uses of his product, a buyer thereof is not ordinarily exposed to the same sources. Unless, of course, he is conducting an enterprise of national scope, one would assume that a buyer's knowledge of the end use of an article would be more or less confined to his own operations and the purposes for which he finds it suitable.

The fact that the Honolulu Advertiser, a newspaper published in the State of Hawaii, customarily uses a green paper of the kind here involved does not necessarly establish that green newsprint of that class or kind is chiefly used in the printing of newspapers throughout the United States.

The instant record lacks sufficient evidence to establish that newsprint of the class to which the paper at bar belongs was at any time chiefly used in the printing of newspapers, or that in its color it conforms to the product provided for in the statute as standard newsprint paper. We are, therefore, constrained to overrule the claim of the plaintiff for free entry.

Judgment will be entered accordingly.